## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

DAVID KARDONICK, individually and on behalf of all others similarly situated and the general public,

        Plaintiff,

vs.

JPMorgan Chase & Co. and
Chase Bank USA, N.A.,

        Defendants.

_____ /

**CASE NO.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

### Class Action Complaint

Plaintiff DAVID KARDONICK, individually and on behalf of all others similarly situated (the "Class"), brings this class action against Defendants JPMorgan Chase & Co. and Chase Bank USA, N.A (collectively referred to as "CHASE" or the "Company"). Plaintiff seeks certification of this matter as a class action. Plaintiff, by and through his attorneys, submits this Class Action Complaint (the "Complaint") against the defendants named herein and alleges as follows:

### NATURE OF THE ACTION

1.  This proposed or putative class action stems from the illicit activities undertaken by CHASE while marketing and selling products associated with their credit cards known as "Chase Payment Protector," "Payment Protection," and other monikers that all offer similar coverage (hereinafter collectively referred to as "Payment Protection").

1

2.      Although CHASE's Payment Protection is indistinguishable from a contract of credit insurance, Payment Protection is not marketed or sold as insurance.  CHASE does not register Payment Protection with the Florida Office of Insurance Regulation, thereby avoiding state regulation.

3.      CHASE violated the law not only through the sale of a product that should be – but is not, due to its unlawful activities – subject to insurance regulations, but also by the deceptive and misleading manner in which it offers the Payment Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.      CHASE markets Payment Protection through direct mail and telemarketing.  It represents Payment Protection as a service that pays the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Payment Protection plan fee for a limited period of time, preventing the account from becoming delinquent.

5.      Despite its simple explanation for marketing purposes, CHASE's Payment Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for consumers to determine what Payment Protection covers and whether it is a sound financial choice.

6.      CHASE makes no effort to determine whether a cardholder is eligible for Payment Protection benefits at the time of sale.  As a consequence, the Company bills thousands of retired persons (many of whom are senior citizens), along with the unemployed, those employed by family members, the self-employed and part-time or seasonal Florida residents, as well as disabled individuals, for Payment Protection coverage, even though their employment or

2

health status prevents them from receiving benefits under the plan.

7.      Further, CHASE makes no effort to determine whether subscribers become ineligible for Payment Protection benefits after they are enrolled in the plan.  Accordingly, when subscribers' employment or health statuses change, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8.      Upon information and belief, CHASE requires customers to enroll for Payment Protection coverage <u>before</u> it provides subscribers with the terms and conditions of the plan. By not adequately disclosing the terms of Payment Protection coverage to consumers <u>before</u> they buy the product, CHASE is violating – among other things – Florida's Deceptive and Unfair Trade Practices Act.

9.      Given the confusing way the written materials present the terms and conditions of Payment Protection, it would be extremely difficult for a subscriber to decipher those provisions.

10.     CHASE has established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions.  It has established its "claim filing" system such that subscribers cannot easily file claims or receive benefits for filed claims.

11.     CHASE does not refund Payment Protection premiums after it has denied subscribers' claims for Payment Protection benefits, nor does it address subscribers' continued obligations to pay the monthly fee for Payment Protection after a claim has been denied.

12.     Payment Protection is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by CHASE, that the product is essentially worthless.

13.     CHASE knows that for those cardholders who choose to pay for Payment Protection, few will ever receive benefits under the plan and even for those that do, the amounts paid in "premiums" will usually exceed any benefits paid out.

14.     As a result of its misleading and deceptive marketing practices in connection with sales of Payment Protection, CHASE has increased its profits by many millions of dollars, all thanks to a product which provides virtually no benefits to thousands of Florida residents who are nevertheless charged for the product month in and month out.

## <u>JURISDICTION AND VENUE</u>

15.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

(a)     This is a class action involving 100 or more class members,

(b)     Plaintiff, a Citizen of the State of Florida, is diverse in Citizenship from Defendants JPMorgan Chase & Co. and Chase Bank USA, N.A., which are incorporated in Delaware and have principal places of business in New York.

16.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 72 herein;

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

   a.     questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

4

b.    a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

c.    the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

d.    there are no unusual difficulties foreseen in the management of this class action.

17.    The Court has personal jurisdiction over CHASE, which has at least minimum contacts with the State of Florida because it has conducted business there and has availed itself of Florida's markets through its promotion, sales, and marketing efforts.

18.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

19.    This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the district in which this Court sits.

## PARTIES

20.    Plaintiff DAVID KARDONICK ("Mr. Kardonick") resides in Miami, Florida. Since 2004, Mr. Kardonick has had a Continental Airlines credit card in his name issued from CHASE bearing Payment Protection features.

21.    Upon information and belief, Defendant JPMorgan Chase & Co. is a publicly traded financial services company incorporated in Delaware with a principal place of business in New York City, New York. Service can be made upon its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE 19801.

22.    Upon information and belief, Defendant Chase Bank USA, N.A. operates a nationally chartered bank. CHASECORP is incorporated in Delaware with a principal place of

business in New York City, New York.  Service can be made upon its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE 19801.

## **FACTUAL ALLEGATIONS**

23.     Payment Protection is self-described by CHASE as a non-insurance product. CHASE has not registered or identified Payment Protection as an insurance product with the Florida Office of Insurance Regulation or other appropriate authorities.

24.     However, upon information and belief, prior to developing and marketing Payment Protection, CHASE did sell credit insurance products, which it registered with appropriate state authorities.  CHASE's credit insurance products offered substantially the same type of coverage as what is offered today as Payment Protection.

25.     Even though CHASE's previously offered credit insurance products were nearly indistinguishable from what is now offered as Payment Protection, CHASE does not designate Payment Protection an "insurance product" so it can avoid state regulation and charge higher fees for the product.

26.     Upon information and belief, CHASE offers Payment Protection to all its credit card customers, but aggressively markets this product to vulnerable Florida consumers who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings.

27.     CHASE markets Payment Protection as a service that will safeguard subscribers' credit card accounts by crediting the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in other

6

circumstances.  In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Payment Protection plan fee for the month in question.

28.     CHASE also markets other "add-on" benefits associated with its Payment Protector plan, like telephone and online resources to manage personal/professional matters and daily credit monitoring, for an added cost.

29.     CHASE sells Payment Protection to consumers through a number of different channels, including direct mail marketing, in which it may ask that the consumer "check the box" to initiate the plan, through telemarketing, where the consumer may be asked to press a button on the telephone to approve initiation of the plan, or through unilaterally imposing the Payment Protection feature on a consumer's credit card.

30.     CHASE shifts its burden and duty of full disclosure prior to the sale to the customer and often requires subscribers to decipher the terms of the product <u>after it has already been purchased</u> and take action to cancel it.  It characterizes this sales scheme as a "30-day review period" such that "[i]f you are not completely satisfied, you will have 30 days to cancel and receive a credit of any Plan fees billed."[1]

31.     Even if the subscriber is later provided with written materials from CHASE it is virtually impossible for the subscriber to determine all of the exclusions and limitations of Payment Protection, or the value of the product, based on what is provided.

32.     Upon information and belief, CHASE imposed charges for "Payment Protector" upon Florida consumers even though individual consumers did not request the product or clearly assent to pay for the product in writing after getting the opportunity to review its governing terms.

---

[1] https://www.chasepaymentprotector.com/learnmore.cfm, last viewed on Sep. 7, 2010.

33.     In some instances, Payment Protection has been unilaterally imposed upon consumers.  In other instances, no written materials explaining the terms and conditions were ever provided to subscribers.  If Payment Protection is imposed and no written materials are provided, the only way subscribers could ever know they have been enrolled in Payment Protection and are being charged for this product is from noticing a line item fee listed on their monthly credit card statements.

34.     The terms of CHASE's Payment Protection schemes are varied, complicated and always changing.  However, all of the various plans provide for some form of benefit upon the occurrence of "covered events," including *Death, Disability* and *Income Loss*.

35.     Payment Protection also provides payment for a limited period of time upon the occurrence of a *Life Event*, defined strictly by CHASE to include a "covered person's" marriage, childbirth, divorce, retirement, change of residence, experience of a natural disaster, and death of spouse.

36.     The restrictions, limitations and exclusions associated with these Payment Protection covered events and the proofs required to establish them are expansive and constantly evolving.

37.     The telephone marketing scripts and the written materials provided by CHASE are incomplete, indecipherable, misleading and obfuscatory.

38.     An example of the misleading and obfuscatory language is CHASE's failure to disclose that Payment Protection is actually akin to an insurance product.  Despite this fact, CHASE's marketing materials carefully avoid any use of the word "insurance."  The materials refer to "claims," which indicates that CHASE internally regards this as an insurance product.

The fees paid for Payment Protection by consumers are actually premiums.

39.     According to the written materials which are only provided <u>after</u> subscribers have already been enrolled in the plan, if at all, upon information and belief the following restrictions on Payment Protection are imposed.  However, because these restrictions are in small print and in incomplete, indecipherable, misleading and obfuscatory language, they are not readily comprehensible to subscribers:

      a.      Payment Protection does not apply to persons employed by family members;

      b.      Payment Protection does not apply to persons employed part time or seasonally;

      c.      Payment Protection does not apply to retired persons;

      d.      Payment Protection does not apply to the self-employed;

      e.      Payment Protection does not apply for some arbitrarily determined time immediately after the unemployment or disability;

      f.      Payment Protection does not apply to persons who have not held their job for some arbitrarily determined amount of time;

      g.      Payment Protection does not apply if you qualify for state or federal unemployment benefits;

      h.      Payment Protection does not apply unless you remain registered at a recognized employment agency;

      i.      Payment Protection coverage is limited to 24 months;

      j.      Payment Protection coverage is limited to one benefit approval per calendar year; and

      k.      Payment Protection requires proof of continuous physician's care for the entire period of benefits.

40.     Upon information and belief, CHASE is in possession of information, such as date of birth and name of last employer, which would assist CHASE in knowing whether a

9

particular cardholder is eligible for Payment Protection.

41. However, CHASE makes no reasonable efforts and undertakes no investigation, including review of information in its possession regarding the cardholder, to determine if Payment Protection coverage would apply to the cardholder. Accordingly, CHASE engages in marketing to enroll individuals in Payment Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer.

42. For instance, Florida retired persons, many of whom are senior Citizens, are charged for this product even though they are categorically excluded from receiving most or all of the benefits under the plan. In fact, CHASE does not even ask customers whether they are retired.

43. Similarly, the benefits offered to persons employed by family members are limited, but CHASE nevertheless fails to affirmatively inform such persons of the limitations in benefits when they are enrolled. In fact, CHASE does not even ask customers whether they are employed by family members.

44. Self-employed individuals are excluded from protection, even though CHASE markets its product to and accepts self-employed individuals' premiums.

45. Further, part-time or seasonal workers are also limited or categorically excluded from receiving benefits. To qualify for benefits, one needs to work at least 30 hours a week in employment considered to be permanent. However, CHASE makes no effort to investigate whether any of the Florida consumers that pay for Payment Protection are part-time or seasonal. These terms are not adequately communicated or defined in any CHASE materials.

46. Finally, benefits are unavailable or limited for disabled persons, but CHASE

nevertheless fails to affirmatively inform these individuals of the limitations in benefits when they are enrolled.  In fact, CHASE does not even ask customers whether they are disabled.

47.     The cost of Payment Protection is a monthly charge of $0.89 per $100 of a subscriber's month-ending credit card balance.  "Add-on benefits" cost the subscriber extra per month.

48.     For example, if a CHASE credit card customer has a balance on a covered account of $10,000, as a Payment Protection subscriber, the customer owes CHASE $92.29 that month just for Payment Protection coverage.

49.     Payment Protection also provides the added benefit to CHASE of lowering available credit to its subscribers through the imposition of this additional fee.  Further, the imposition of the fee creates a cycle of profitability for CHASE, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Payment Protection fees in upcoming months.

50.     "Customer service" is available for CHASE's Payment Protection subscribers. To access customer service, subscribers can call a 1-800 number or send mail to a P.O. Box in Miami, Florida.

51.     Upon information and belief, CHASE's Payment Protection call center is based in a foreign country.  Employees are trained to assist subscribers with all questions, including inquiries concerning canceling memberships, plan benefits and filing claims.

52.     CHASE has established its customer service system in such a way that it is difficult for subscribers to cancel Payment Protection, to get detailed information about claim benefits or restrictions, or to file claims.

11

53.     For example, upon information and belief, employees at CHASE's call center are given authority to deny claims immediately over the phone, but do not have authority to approve claimants to receive benefits in the same manner.

54.     Further, when claims for Payment Protection benefits are denied, CHASE has not implemented a process through which subscribers' Payment Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Payment Protection benefits.  In fact, if subscribers are denied Payment Protection benefits, CHASE neither affirmatively removes subscribers from Payment Protection enrollment going forward, nor is it CHASE's policy to inform subscribers of their continued obligations pay for Payment Protection even though they have been deemed to be ineligible for benefits.

55.     Although heralded as coverage designed for a subscriber's "protection and peace of mind," the Payment Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are imposed, because of the exclusions of benefits, and because of the administrative and bureaucratic hurdles that are placed in the way of Florida subscribers who attempt to secure payments from CHASE under Payment Protection coverage.

## FACTUAL ALLEGATIONS AS TO DAVID KARDONICK

56.     Mr. Kardonick is a 28 year old Florida resident.

57.     In or around November 2004, Mr. Kardonick enrolled for and became a CHASE credit card holder.  In or around February 2005, Mr. Kardonick became enrolled in Payment Protection through CHASE's Payment Protector Program.

58.     At the time Mr. Kardonick became enrolled in Payment Protection, he was self-

employed. However, no one from CHASE ever asked Mr. Kardonick about his employment status before enrolling him in Payment Protection.

59.     In or around March 2010, Mr. Kardonick's business had difficulty and was shut down and Mr. Kardonick informed CHASE of his employment status.

60.     When Mr. Kardonick informed CHASE about his business and requested initiation of the payment protection plan, he was informed by CHASE that its payment protection plan was not eligible for self employed individuals.

## CLASS ACTION ALLEGATIONS

61.     Plaintiff brings this action on her own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

62.     Plaintiff brings this action as a class representative to recover damages and/or refunds from CHASE for consumer fraud as expressly defined in Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.202 *et seq.*, injunctive relief and declaratory judgment, and unjust enrichment.

63.     This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Federal Rules of Civil Procedure Rule 23(a) and (b).

64.     Plaintiff seeks certification of a class comprised of the following Florida Citizens and consumers:

> All residents of the State of Florida who (1) were solicited by CHASE to purchase Payment Protection; and (2) paid for Payment Protection ("Payment Protection Subscribers") at all times the product was sold.

65.     Plaintiff seeks certification of the following subset class comprised of the

following Florida Citizens and consumers:

> All residents of the State of Florida who were not eligible for full benefits, or whose eligibility for benefits were limited by express exclusions, including but not limited to those Payment Protection subscribers who were retired and over 60 years of age, self-employed or part time or seasonal workers, or were disabled, either at the time that they were solicited for and made payments to CHASE for Payment Protection, or any time thereafter while continuing to pay for Payment Protection.

66.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

67.     Excluded from the Class are:

a.     Defendants and any entities in which Defendants have a controlling interest;

b.     Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of Defendants;

c.     The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.     Persons or entities with claims for personal injury, wrongful death and/or emotional distress;

e.     All persons or entities that properly execute and timely file a request for exclusion from the Class;

f.     Any attorneys representing the Plaintiff or the Class; and

g.     All governmental entities.

68.     Numerosity – Fed. R. Civ. P. 23(a)(1).  The Class is comprised of over 100 people and possibly hundreds of thousands of individuals who were CHASE customers, the joinder of which in one action would be impracticable.  The exact number or identification of the Class members is presently unknown.  The identity of the Class members is ascertainable.  In addition to rolls maintained by the Defendants and their agents, the Class members may be located and

14

informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.  The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

69.  <u>Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3)</u>.  There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class.  The questions of law and fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a)  Whether CHASE's sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of Florida law;

b)  Whether CHASE's common and uniform sales, billing, and marketing scheme related to Payment Protection insurance as alleged in this Complaint constitutes a deceptive and unfair trade practice as under Florida law;

c)  Whether the Plaintiff and the Class members are entitled to restitution of all amounts acquired by CHASE through its common and uniform scheme;

d)  Whether Plaintiff and the Class members are entitled to injunctive relief requiring the disgorgement of all fees wrongfully collected by CHASE;

e)  Whether Plaintiff and the Class members are entitled to prospective injunctive relief enjoining CHASE from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme as alleged in this Complaint; and

f)  Whether Plaintiff and the Class members are entitled to recover compensatory and punitive damages as a result of CHASE's wrongful scheme.

70.  <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiff asserts claims that are typical of the entire Class, having all been targeted by CHASE as consumers and who were improperly

assessed, and paid, charges for Payment Protection.  Plaintiff and the Class members have similarly suffered harm arising from CHASE's violations of the law as alleged in this Complaint.

71.    <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1)</u>.  Plaintiff is an adequate representative of the Class because he fits within the class definition and his interests do not conflict with the interests of the Members of the Class he seeks to represent.  Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the entire Class.  Plaintiff is represented by experienced and able attorneys from coordinated law firms that will collectively and jointly serve as class counsel.  Class counsel have litigated numerous class actions, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the entire Class.  Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Class.

72.    <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>.  The class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Plaintiff and members of the Class have suffered irreparable harm as a result of CHASE's fraudulent, deceitful, unlawful, and unfair conduct.  Because of the size of the individual Class members' claims, no Class members could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as CHASE continues to engage in the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and CHASE would be permitted to retain the proceeds of their violations of law.  Further, individual litigation has the potential to result in inconsistent or contradictory judgments.  A class action in this case

16

presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT ONE - BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING[2]

73.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here word for word.

74.     Upon information and belief, Plaintiff and CHASE contracted for Payment Protection benefits.

75.     Upon information and belief, the terms and conditions of this agreement are embodied in the Welcome Kit and other written materials in the possession of CHASE.

76.     There are various terms of the contract that CHASE was obligated to perform but did not, thus breaching an express provision of the contract.

77.      In Florida, an implied covenant of good faith and fair dealing is part of every contract.

78.     The implied covenant of good faith and fair dealing applies where one party, such as CHASE in this case, has the power to make discretionary decisions to further its own interests due to a lack of defined standards in the contract.  It is invoked so that one party cannot exercise the discretion allotted to it so as to thwart the contracting parties' reasonable expectations.

79.     Here, CHASE is granted wide authority and discretion under the contract.  Upon information and belief, there are various express contractual duties or obligations over which CHASE has sole discretion.

---

[2] Florida treats the implied covenant of good faith and fair dealing as a species of a breach of contract claim (rather than an independent cause of action).  Accordingly, Plaintiff pleads these claims together, in a single count.

80.     CHASE, through the acts described herein and discretion allotted it under the contract, has enacted uniform policies which act capriciously to contravene the reasonable expectations of Plaintiff and the Class.

81.     Actions or inaction taken to hinder or obstruct performance, or knowingly and unreasonably delaying the performance of one's duties under a contract, breaches the implied covenant of good faith and fair dealing.  Through its uniform policies and practices, CHASE does just this.

82.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain; willful rendering of imperfect performance; abuse of a power to specify terms; and interference with or failure to cooperate in the other party's performance.

83.     CHASE has breached the implied covenant of good faith and fair dealing which is part of the Payment Protection agreement.

84.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them in the Payment Protection agreement.

85.     Plaintiff and members of the Class have sustained damages as a result of CHASE's breach of the covenant of good faith and fair dealing.

### COUNT TWO – UNCONSCIONABILITY

86.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here word for word.

87.     CHASE's Payment Protection policies and practices are substantively and

18

procedurally unconscionable in the following material respects, among others:

a.    CHASE unilaterally imposes Payment Protection upon its customers' credit card accounts, thereby failing to disclose to customers that Payment Protection is an optional plan and that they have the option to "opt out" of Payment Protection;

b.    CHASE did not obtain affirmative consent from subscribers prior to enrolling them in Payment Protection;

c.    CHASE generally does not provide the terms and conditions of Payment Protection to subscribers until <u>after</u> they have enrolled in the plan – the substance of the terms and conditions were only recently made available on the internet;

d.    The written documents that CHASE does eventually provide to subscribers does not provide subscribers with sufficient information to understand the terms and conditions of Payment Protection;

e.    The initial provided and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by CHASE, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;

f.    The documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not require affirmative customer consent (like a signature) and do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though CHASE had the information and means of determining eligibility prior to enrolling these customers in Payment Protection;

g.    CHASE does not alert customers that certain individuals are *per se* ineligible for Payment Protection benefits, including but not limited to retired, unemployed, employed by family members, persons employed on a part-time or seasonal basis and those that are disabled.

h.    The amount charged in fees for Payment Protection is not rationally related to the amount of value Payment Protection provides to subscribers, nor is the value of Payment Protection computable or discernable by subscribers;

i.    CHASE charges exorbitant fees for Payment Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because CHASE does not identify Payment Protection as an insurance product, which would require it to provide fees and claims-paid

data to state authorities for review and regulation;

j.     The formula CHASE uses to compute Payment Protection fees is misleading such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers; and

k.     CHASE operates its customer service centers in such a way as to make it difficult for subscribers to cancel enrollment, obtain information about the terms and conditions of Payment Protection coverage, and file claims, in order for CHASE to maximize the number of Payment Protection subscribers and minimize the amount of benefits it pays to these subscribers.

88.     Considering the great business acumen and experience of CHASE in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

89.     The imposition of Payment Protection fees which excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to CHASE's costs of administering the plan and providing the benefits offered.

90.     Plaintiff and members of the Class have sustained damages as a result of CHASE's unconscionable policies and practices as alleged herein, including but not limited to all premiums paid for Payment Protection

**COUNT THREE – VIOLATIONS OF FLORIDA'S DECEPTIVE
AND UNFAIR TRADE PRATICES ACT (Fla. Stat. § 501.202 *et seq.*)**

91.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as

20

though set out here word for word.

92.     CHASE's Payment Protection plan constitutes "[t]rade or commerce" under Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA").

93.     Plaintiff is a "consumer" as defined in Fla. Stat. § 501.203, who has purchased Payment Protection coverage primarily, if not exclusively, for personal, family, or household purposes.

94.     Each Defendant is a "person" or "entity" as used in the FDUPTA.

95.     Through its conduct, as described in preceding paragraphs of this Complaint, CHASE has engaged in a deceptive act or unfair practice.

96.     Upon the facts alleged, Defendants also violated various applicable rules of the Florida Administrative Code.

97.     Plaintiff and Members of the Class are not involved in CHASE's business of Payment Protection.

98.     Further, Defendants willfully employ practices in violation of the FDUPTA which victimizes and attempt to victimize both individuals who are 60 years of age or older and individuals with an educational deficiency which substantially limits their ability to comprehend the terms of the contractual agreement entered into.  Defendants knew or should have known that their conduct was unfair and/or deceptive, and thus Defendants are liable for a civil penalty of not more than $15,000 for each such violation, as well as restitution pursuant to Fla Stat. § 501.2077.

99.     As a result of CHASE's activities which offend the FDUPTA, Plaintiff has suffered an ascertainable loss of money and property.   Specifically, Plaintiff has become

responsible for the payments attributable to Payment Protection coverage, even though that service is virtually worthless to him.

100.   Plaintiff seeks judicial orders of an equitable nature against CHASE, including, but not limited to, orders declaring CHASE's practices to be unlawful, unfair, unconscionable and/or deceptive, and enjoining CHASE from undertaking any further unlawful, unfair, unconscionable, and/or deceptive acts or omissions.

101.   Plaintiff and the Class seek disgorgement and restitution plus interest on damages at the legal rate, as well as penalties for the targeting of the elderly and disabled.

102.   Because Plaintiff seeks to enforce an important right affecting the public interest, Plaintiff requests an award of attorneys' fees and costs on behalf of herself and the Class.

103.   Due to CHASE's violations of the FDUPTA prohibiting unfair and deceptive acts and practices, Plaintiff and members of the Class have suffered monetary damages for which CHASE is liable.

## COUNT FOUR – INJUNCTIVE RELIEF
## PAYMENT PROTECTION RESTITUTION

104.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

105.   Plaintiff asks the Court to grant the remedy of restitution to himself and to all members of the Class who made payments to CHASE for Payment Protection.  The Plaintiff asks the Court to grant the following relief:

a)   a refund of all Payment Protection payments made to CHASE;

b)   a refund to any consumers who were retired at the time they were sold Payment Protection by CHASE or at any time they paid for Payment Protection;

c)     a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or employment status, at the time they were sold Payment Protection by CHASE or at any time they paid for Payment Protection;

d)     a refund to consumers who were otherwise not eligible for Payment Protection benefits at any time they paid for Payment Protection; and/or

e)     a refund of all amounts CHASE assessed for Payment Protection that were in excess of sums which would have been permissible had CHASE correctly identified the service as insurance.

106.   Further, Plaintiff seeks injunctive relief enjoining CHASE from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme described in this Complaint.

## COUNT FIVE – DECLARATORY RELIEF

107.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

108.   Plaintiff seeks a Declaratory Judgment finding that the conduct of CHASE is in violation of the Florida's Unfair and Deceptive Trade Practices Act, and enjoining them from continuing in such conduct.

## COUNT SIX – UNJUST ENRICHMENT

109.   Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here word for word.

110.   In seeking to sell credit cards to Plaintiff and members of the putative Class, CHASE withheld material terms from consumers prior to activation of Payment Protection charges, including the express benefits, limitations, restrictions, and exclusions associated with the product.

111.    CHASE was unjustly enriched by charging Plaintiff and the Class sums for Payment Protection coverage that were in excess of amounts which would have been permissible had CHASE properly identified the service as insurance.

112.    CHASE was unjustly enriched by the practice of signing people up for Payment Protection that never agreed to be plan members.

113.    CHASE was unjustly enriched by the practice of withholding material terms of Payment Protection until after the product was charged to consumers' credit cards.

114.    CHASE was unjustly enriched by their business practice of making it so impermissibly difficult for consumers to actually receive coverage under Payment Protection that the service was virtually worthless.  Such unconscionable acts include, but are not limited to:

    a)    Denying claims over the phone without written explanation;

    b)    Denying claims without sufficient investigation;

    c)    Requiring claimants to submit excessive and duplicate documentation, and/or;

    d)    Establishing a telephone number that does not allow for claimants to speak to a live person, a person in a timely manner, or a person that is properly trained to handle Payment Protection claims, in order for the subscriber to successfully file a claim.

115.    CHASE was unjustly enriched by charging Plaintiff and the Class members for illusory benefits.

116.    CHASE was unjustly enriched by charging Plaintiff and the Class members who were retired or were otherwise not eligible to receive payments by the terms of the Payment Protection plan.

117.    As a result of CHASE's actions which constitute unjust enrichment, Plaintiff and

Class members suffered actual damages for which CHASE is liable.  CHASE's liability for those damages should be measured by the extent of their unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays:

A.     That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The Plaintiff is a proper class representative, and that the best practicable notice of this action be given to members of the Class represented by the Plaintiff;

B.     That judgment be entered against CHASE and in favor of Plaintiff and the Class on the Causes of Action in this Complaint, for injunctive relief as requested above, and for actual, compensatory, and punitive damages, and statutory penalties in an amount to be determined at trial;

C.     That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against CHASE;

D.     For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury consisting of twelve persons on all issues so triable.

DATE: September 8, 2010                     Respectfully Submitted,

**KU & MUSSMAN, P.A.**

Brian Ku (FL Bar # 610461)
Louis Mussman (FL Bar #597155)
11098 Biscayne Blvd., Suite 301

25

Miami, Florida 33161
Tel: (305) 891-1322
Fax: (305) 891-4512
louis@kumussman.com

Richard M. Golomb
Ruben Honik
Kenneth J. Grunfeld
**GOLOMB & HONIK, PC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: (215) 985-9177
Fax: (215) 985-4169
kgrunfeld@golombhonik.com

Allan Kanner (LA Bar #20580)
Conlee S. Whiteley (LA Bar #22678)
M. Ryan Casey (LA Bar #30192)
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, Louisiana  70130
Tel: (504) 524 -5777
Fax: (504) 524 -5763
c.whiteley@kanner-law.com

ATTORNEYS FOR PLAINTIFF