**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **DAVID KARDONICK, JOHN DAVID, and MICHAEL CLEMINS, individually and on behalf of all others similarly situated,**<br><br>**Plaintiffs,**<br>       v.<br><br>**JPMORGAN CHASE & CO. and CHASE BANK USA, N.A.**<br><br>                **Defendants.** | C. A. No. 1-10-cv-23235-WMH |

### MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

Plaintiffs David Kardonick, John David, and Michael Clemins ("Plaintiffs") respectfully request the Court to approve Plaintiffs' Application for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Application"). The following Memorandum of Law is submitted in support of the Application:

**I.    PRELIMINARY STATEMENT**

Plaintiffs and their attorneys, Carney Williams Bates Pulliam & Bowman, PLLC and Golomb & Honik, P.C. ("Settlement Counsel"), submit this Memorandum of Law in support of their Application for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Application") in this class action (the "Action" or the "Litigation") against defendants JPMorgan Chase & Co. and Chase Bank USA, N.A., (collectively "Chase" or "Defendants"). Settlement Counsel have obtained

an excellent result in the settlement of this Litigation (the "Settlement"), achieving a recovery for the Class with a value of $20 million.

As discussed herein and in the accompanying Declaration of Allen Carney and Richard M. Golomb in Support of Plaintiffs' Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration"), as well as the Declaration of Jonathan Marks ("Marks Declaration") attached as Exhibit 6 to the Joint Declaration, Settlement Counsel expended substantial time and effort in prosecuting and settling this Litigation.  During the course of the Litigation, Settlement Counsel, among other things, (a) conducted an extensive factual investigation; (b) interviewed numerous witnesses; (c) reviewed and analyzed Defendants' regulatory filings, financial reports, marketing materials and client statements; (d) filed a detailed and comprehensive complaint; (e) reviewed and analyzed thousands of pages of documents produced by Defendants; (f) assessed the likelihood of prevailing on any motion to dismiss, motion for class certification, or motion for summary judgment, as well as at trial; (g) analyzed the damages likely to be proven at trial; (h) attended pre-mediation meetings; (i) propounded discovery requests; (j) successfully negotiated at arm's length a favorable Settlement for the Class with the substantial assistance of a highly regarded and experienced mediator; and (k) conducted confirmatory discovery, which included witness interviews.  As a result of these efforts, Settlement Counsel have successfully obtained a Settlement that Settlement Counsel believe to be fair, reasonable, adequate, and in the best interest of the Class.  To date, however, Settlement Counsel have never applied for or received remuneration for their efforts.  In light of the foregoing, Settlement Counsel respectfully request that this Court approve this Application and award attorneys' fees in the amount of $5,000,000 or 25% of the recovery of $20,000,000, and reimbursement of litigation expenses in the amount of $62,676.54.

Pursuant to this Court's Order dated February 11, 2011 (the "Preliminary Approval Order"), copies of the court-approved Notice and Claim Form were mailed to all Class Members, and publication notice was made in USA Today and PR Newswire. This Application is consistent with the Notice, which advised Class Members that as part of the Settlement, Chase agreed to pay and not to contest any award of attorneys' fees, costs, and disbursements in the amount of $5 million or less. The Notice further provides all Class Members with the opportunity to contact Settlement Counsel regarding any part of the Notice and/or the Settlement and advised Class Members of their right to be heard or object to the Settlement or the fee and expense application. While several class members have expressed opinions that they believe the settlement is not sufficiently lucrative, the vast majority of the class members (99.999%) have offered no objection. The favorable response of the Class further supports the reasonableness of the requested fee and expense award.

## II.      SETTLEMENT COUNSEL HAVE OBTAINED AN EXCELLENT RECOVERY FOR THE CLASS.

In arriving at the Settlement, Settlement Counsel actively investigated and prosecuted this litigation engaging in, among other things, (a) conducted an extensive factual investigation; (b) interviewed numerous witnesses; (c) reviewed and analyzed Defendants' regulatory filings, financial reports, marketing materials and client statements; (d) filed a detailed and comprehensive complaint; (e) reviewed and analyzed thousands of pages of documents produced by Defendants; (f) assessed the likelihood of prevailing on any motion to dismiss, motion for class certification, or motion for summary judgment, as well as at trial; (g) analyzed the damages likely to be proven at trial; (h) attended pre-mediation meetings; (i) propounded discovery requests; (j) successfully negotiated at arm's length a favorable Settlement for the Class with the substantial assistance of a highly regarded and experienced mediator; and (k) conducted confirmatory discovery, which included witness interviews. Thus, the Settlement was reached only after substantial discovery and numerous

mediation sessions with an experienced mediator. Accordingly, Settlement Counsel certainly had sufficient information to act intelligently in negotiating the terms of the Settlement that are before the Court for approval. Thus, in light of Settlement Counsel's efforts and analyses, and considering the risk, expense and likely duration of continuing the Litigation, this Settlement is an excellent result and will provide substantial benefits to the Class.

### III. THE RELEVANT FACTORS DICTATE THAT THE REQUESTED FEE IS REASONABLE

The Eleventh Circuit has instructed district courts to consider several factors when determining what constitutes a reasonable attorney fee award. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). These factors include: (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974));[1] *see also Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 688 (N.D.Ga. 2001). An analysis of these factors confirms that the fee requested by Settlement Counsel is reasonable.

---

[1] The *Camden I* Court also recognized additional factors that a court may consider in awarding a percentage of the fund award, including: (1) whether the settlement confers non-monetary benefits upon the class; (2) whether there are any substantial objections to the settlement terms or fee requests; (3) the economics involved in prosecuting a class action; (4) the time required to reach settlement; and (5) any additional factors unique to a particular case which may be relevant to the district court's consideration. *Camden I*, 946 F.2d at 755.

> A percentage-based fee award accomplishes several objectives:
>
> First, it is consistent with the private market place where contingent fee attorneys are regularly compensated on a percentage of recovery method. Second, it provides a strong incentive to plaintiffs' counsel to obtain the maximum possible recovery in the shortest time possible under the circumstances. Finally, the percentage approach reduces the burden of the Court to review and calculate individual attorney hours and rates and expedites getting the appropriate relief to class members.

*Garst v. Franklin Life Ins. Co.*, No. 97-C-0074-S, 1999 U.S. Dist LEXIS 22666, at *83-84 (N.D. Ala. June 25, 1999) (citations omitted). Each of these objectives applies here.

A review of recent fee awards in common fund class actions within this Circuit confirms that the requested 25% fee is well below the range of typical fees awarded. *See, e.g., Waters*, 190 F.3d at 1293-98 (affirming 30% award); *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-cv-3475, 2009 WL 1456698, at * 2-4 (N.D. Ga. May 22, 2009) (awarding 30%); *LaGrasta v. Wachovia Capital Markets*, LLC, No. 2:01-CV-251-FTM-29-DNF, 2006 WL 4824480 (M.D. Fla. Nov. 6, 2006) (awarding 30%); *Ressler v. Jacobson*, 149 F.R.D. 651, 653 (M.D. Fla. 1992) (awarding 30%).[2]

In *Camden I*, the Eleventh Circuit recognized that there "is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be rewarded as a fee because the amount of any fee must be determined upon the facts of each case." 946 F.2d at 774.

### (1) The Time and Labor Required

---

[2] It is also well within the range of fees awarded in this Circuit in non-securities class actions. *See, e.g., In re Winn-Dixie Stores, Inc. ERISA Litig.*, No. 3:04-cv-194, 2008 WL 815724, at *8 (M.D. Fla. Mar. 20, 2008) (awarding 26%); *Eslava v. Gulf Tel. Co.*, No. 04-0297-KD-B, 2007 WL 4105977, at *2 (S.D. Ala. Nov. 16, 2007) (awarding 30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339-10 (S.D. Fla. 2007) (awarding 30%); *In re HealthSouth Corp. ERISA Litig.*, No. CV-03-BE-1700-S, 2006 WL 2109484, at *6-7 (N.D. Ala. June 28, 2006) (awarding 25%); *Allapattah Servs. Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) (awarding 31.33% of $1.06 billion settlement fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99 MDL 1317, 2005 U.S. Dist. LEXIS 43082, at *19-22 (S.D. Fla. Apr. 19, 2005) (awarding 33.3%); *Fabricant v. Sears Roebuck & Co.*, No. 98-1281-Civ., 2002 WL 34477904, at *4 (S.D. Fla. Sept. 18, 2002) (awarding 28.5%).

A review of the efforts and time expended by Settlement Counsel establishes that the requested fee is reasonable. Settlement Counsel have exerted substantial efforts in achieving this excellent result.  As discussed in the Joint Declaration filed concurrently with this Motion, the Litigation has been hard-fought.  Specifically, Settlement Counsel  researched and analyzed all factors involved in Plaintiffs' claims as well as the possible defenses available to Defendants, drafted the operative complaints advancing Plaintiffs' claims, drafted a response (unfiled) to Defendant's Motion to Dismiss, and successfully obtained preliminary approval certification of a settlement class.  In addition, following discovery, Settlement Counsel engaged in contentious settlement negotiations with Defendants' Counsel.  The settlement negotiations were conducted through a certified mediator, Jonathan Marks, who attests that "[t]he settlement effort at the mediation session included extensive exchanges of view on the merits and difficult, arms-length negotiations, in which each side worked to persuade the other to modify positions based on reevaluation of risks faced if the case did not settle.  In my view, counsel for each Party were effective advocates for their clients and effective participants in the effort to reach a settlement that fairly valued the risks and opportunities of each Party in the litigation.  I observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party.  In fact, it was apparent that this was not the case.  The ultimate terms of the settlement represented a compromise of the Parties' initial positions, but in my view these compromises were the product of the Parties' assessment of the perceived relative strengths and weaknesses of their positions, and the risks inherent in continued litigation."  Marks Decl. ¶19-22 (attached as Exhibit 6 to the Joint Declaration).  Clearly, Settlement Counsel have been fully committed to the prosecution of this Action and have devoted substantial time and resources to this Litigation.

Furthermore, "courts favor early settlement," *Lipuma* 406 F. Supp. 2d at 1324 (approving settlement when parties exchanged informal discovery and class counsel familiarity with issues from prior litigation), and this policy "has special importance in class actions with their notable uncertainty, difficulties of proof, and length." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

The Fifth Circuit's decision in *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. Apr. 3, 1981)[3] is instructive. In *Corrugated Container*, the Fifth Circuit approved a settlement even though there had been no formal discovery into the merits of the parties' claims. Observing that "plaintiffs' negotiators had access to a plethora of information regarding the facts of their case," the Fifth Circuit rejected the objectors' argument that a settlement was inadequate based on the lack of formal discovery. *Id.* at 211. Unless "the record points unmistakably toward the conclusion that the settlement was the product of uneducated guesswork," the lack of formal discovery should play little weight in evaluating the merits of a settlement. *Id.; see also Cotton v. Hinton*, 449 F.2d 1326, 1332 (5th Cir. 1997) (observing that "informality in the discovery of information is desired," and "[i]t is too often forgotten that a conference or telephone call to opposing counsel may often achieve the results sought by formal discovery").

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted all decisions from the Fifth Circuit published before Sept. 30, 1981 as binding precedent.

Tellingly, under the lodestar approach,[4] Settlement Counsel have expended a total of 3,344 hours in this case, with total billings of $1,912,853, for which they have never previously applied for or received fees.[5] In calculating their lodestar, counsel included time spent by attorneys and paralegals and used their normal and customary billing rates, which are in line with prevailing market rates for attorneys and paralegals with comparable experience, skill, and qualifications. *See* Joint Declaration Exhibits 1-5; *see also SEC v. Mut. Benefits Corp.*, Case No. 04-60573-CIV-MORENO, 2009 U.S. Dist. LEXIS 118760, at *15 (S.D. Fla. Dec. 7, 2009) (noting rates of $550 to

---

[4] Under the lodestar formula, "[t]he first step in this approach is to calculate the time and labor expended by the parties and multiply this by an appropriate fee. The product is called the 'lodestar.' The next step is to calculate a multiple to be applied to the lodestar. A court determines this multiple, which may increase or decrease the lodestar amount, by reviewing all aspects of the case." *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990).

[5] While it is not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 25% award. *See, e.g., Waters*, 190 F.3d 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Here, based on the $200 million Settlement Fund, the requested 17% award results in a multiplier of only approximately 2.12391. This is well below the range of multipliers frequently awarded in class action settlements of similar magnitude in this and other circuits. *See, e.g., Pinto*, 513 F. Supp. 2d at 1344 (noting that lodestar multipliers "in large and complicated class actions" tend to range from 2.26 to 4.5, and that while "three appears to be the average" many cases have awarded higher multipliers) (citing *Behrens v. Womentco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1998), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable."); *see also In re Comverse Techs. Inc. Sec. Litig.*, No. 06-1825, 2010 U.S. Dist. LEXIS 63342, at *14 (E.D.N.Y. June 23, 2010) (awarding 25% of $225 million, representing a 2.78 multiplier); *CMS Energy*, 2007 U.S. Dist. LEXIS 96786, at *14-16 (awarding 22.5% of $200 million, representing a 2.6 multiplier); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (awarding 21.4% of $455 million, representing a 2.89 multiplier): *In re Charter Comm'ns Inc.*, No. 02-1186, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (awarding 20% of $146.25 million, representing a 5.61 multiplier): *Rite Aid*, 362 F. Supp. 2d at 589-90 (awarding 25% of $126.6 million, representing a 6.96 multiplier).

$765 in the State of Florida). Moreover, under the lodestar method, Settlement Counsel's fee request represents a multiplier of 2.6, underscoring the reasonableness of the request. Indeed, as recognized in *Behrens*, "the range of lodestar multiples in large and complicated class actions runs from a low of 2.26 to a high of 4.5." 118 F.R.D. at 549 (awarding a lodestar multiplier of 3); *see also In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("In view of the complexity of the case, the risk that litigation would produce no recovery and the quality of representation provided by plaintiffs' counsel, plaintiffs' counsel seek to apply a multiplier of approximately 2.26 to the lodestar. Such a multiplier appears to be at the lower end of the range of multipliers used in other large cases.").

**(2) The Novelty and Difficulty of the Questions Involved, the Skill Requisite to Perform the Legal Service Properly, and the Preclusion of Other Employment Due to Acceptance of this Case**

Settlement Counsel are qualified and experienced attorneys in complex class litigation and specifically payment protection litigation, and respectfully submit that the work they performed in this litigation reflects those qualifications. As set forth in the Joint Declaration, the legal and factual issues in this Action were difficult ones, and were addressed by Settlement Counsel in a manner that successfully advanced this Litigation toward settlement. Specificall**y**, this Litigation required an in-depth comparative analysis of various states' deceptive trade practices acts and a global damages analysis.

Additionally, Settlement Counsel have expended substantial time and resources on this Litigation. Had Settlement Counsel not taken a role in this Litigation, they would have been free to allocate their time and resources elsewhere. Moreover, because of the contingent nature of the representation in this matter, Settlement Counsel had to defer any recovery of their fees and expenses until a successful conclusion of the Litigation. This further supports the fee award

requested herein. *See In re Heritage Bond Litig. v. United States Trust Co. of Tex., N.A.*, 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Settlement Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award."); *Del Global Techs.*, 186 F. Supp. at 372 ("Settlement Counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated"); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 164 (S.D.N.Y. 1989) ("[C]ontingent fee risk is the single most important factor in awarding a multiplier."); *Flight Transp. Corp. Sec. Litig.*, 685 F. Supp. 1092, 1096 (D. Minn. 1987) ("The fact that counsel for the plaintiff classes prosecuted this case on a contingent fee basis warrants a multiplier of the lodestar."); *In re Warner*, 618 F. Supp. at 747 ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award." (citations omitted)).

### (3)     The Customary Fee, the Contingent Nature of the Fee, and Time Limitations Imposed by Client or Circumstances

The "customary fee" in a class action lawsuit is contingent. *Ressler*, 149 F.R.D. at 654. This is so because virtually no individual possesses a sufficiently large stake in such litigation to justify paying attorneys on an hourly basis. *Id.*; *see also Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

It is generally accepted that the contingent nature of attorneys' fees should be given substantial weight in assessing the requested fee award. *See Behrens*, 118 F.R.D at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."). "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981); *see also Jones v. Central Soya Co.*, 748 F.2d 586, 591 (11th Cir.

1984); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980); *Walters v. City of Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985); *Ressler*, 149 F.R.D. at 656.  Courts have adopted this approach due to the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever.  *See Ressler*, 149 F.R.D. at 655-56.

The contingent nature of Lead Counsel's fees should be given substantial weight in assessing the requested fee award.  Courts have consistently recognized that the risk that Settlement Counsel could receive little or no recovery is a major factor in determining the award of attorneys' fees:

> A determination of a fair fee for Settlement Counsel must include consideration of the contingent nature of the fee...and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is "'perhaps the foremost' factor" in determining an appropriate fee award.

*Pinto*, 513 F. Supp. 2d at 1339; *see also Ressler*, 149 F.R.D. at 654-55; *Behrens*, 118 F.R.D. at 548 (S.D. Fla. 1988) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees.").  "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."  *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981).  This is so because of the risk that after investing thousands of hours, plaintiffs' counsel may receive no compensation whatsoever.  *See Ressler*, 149 F.R.D. at 656-57.

As the court in *Behrens* noted:

> In a securities fraud action, a contingency fee arrangement has added significance. The federal securities laws are remedial in nature and, in order to effectuate their statutory purpose of protecting investors and consumers, private lawsuits should be encouraged.  If the ultimate effectiveness of these remedies is to be preserved, the efficacy of class actions and of contingency fee arrangements - often the only means of legal representation available given the incredible expense associated with these actions - must be promoted.

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee.  There are risks inherent in financing and prosecuting complex litigation of this type.

11

When Lead Counsel undertook representation of Lead Plaintiffs in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and the expense involved in light of the possibility of a recovery at an uncertain date, or of no recovery at all. Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing thousands of dollars in expenses would deter most firms. Thus, the "undesirability" of the case also weighs in favor of the requested fee.

Success in contingent litigation such as this is never guaranteed. *See, e.g., Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997)(reversing jury verdict for $81.3 million in securities class action); *Berkey Photo, Inc., v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)(reversing a multi-million dollar judgment after a lengthy trial); *Trans World Airlines, Inc., v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd sub nom.*, *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363 (1973)(plaintiff's judgment of $145 million overturned after years of litigation). Thus, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable and difficult effort. As such, the substantial risks of this Litigation justify the fee requested herein.

**(4)** **The Amount of the Settlement**

"It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained." *Ressler*, 149 F.R.D. at 655. As stated above, Settlement Counsel have negotiated a settlement with an a value of $20 million. This Settlement is an excellent result for the Class, particularly in light of the risks of continued litigation. Thus, instead of facing additional

years of costly litigation and the risk of no recovery at all, eligible Class Members will now promptly receive the benefits obtained in the Settlement.

### (5)     The Experience, Reputation and Ability of the Attorneys

Settlement Counsel are qualified and experienced attorneys in complex litigation involving securities and consumer fraud claims. The firm resumes of Settlement Counsel (see Exhibits 1-5 to the Joint Declaration) attest to the national reputation and extensive experience of Settlement Counsel in the area of complex class litigation. Without question, Settlement Counsel's experience and skill was a major factor in obtaining the result achieved in this Litigation. Indeed, mediator Marks recognized the superior performance of counsel here. Marks Decl. ¶19-22 (attached as Exhibit 6 to the Joint Declaration).

In addition, this Court should consider the elite standing of defense counsel when awarding fees, because such standing reflects the challenge faced by Settlement Counsel. *See Ressler*, 149 F.R.D. at 654. The Defendants were represented by Covington & Burling, LLP, a very able and prestigious law firm with vast resources at its disposal. The Defendants' attorneys have significant experience in this type of litigation and consistently took aggressive positions in the negotiations to promote the interests of their clients.

### (6)     The "Undesirability" of the Case and the Nature and Length of the Professional Relationship with the Client

In certain instances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. There are risks inherent in financing and prosecuting complex litigation of this type. Knowing that a company such as Chase would be represented by a large law firm with vast resources and experienced counsel, and knowing that thousands of hours and hundreds of thousands of dollars could be spent in the prosecution of the litigation, only those firms that concentrate in class actions would ever consider undertaking such representation. Indeed, only the most experienced class action

firms would risk the time and the expense involved in light of the possibility of a recovery at an uncertain date, or of no recovery at all. Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing thousands of dollars in expenses would deter most firms. Settlement Counsel undertook to represent their clients with significant risks and obtained an exceptional result.

### (7)     Awards in Similar Cases

Settlement Counsel is requesting a fee of $5 million, representing a lodestar multiplier of 2.6. As noted above, the requested fee is in line with fee awards in similar class action litigation. *See In re Merck & Co. Vytorin ERISA Litig.*, Civil Action No. 08-CV-285 (DMC); 2010 U.S. Dist. LEIXS 12344, at *47 (D.N.J. Feb. 9, 2010) (finding a lodestar multiplier of 2.786 reasonable); *McGee v. Cont'l Tire N. Am., Inc.,* Civ. No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199, at *47-8 (D.N.J. Mar. 4, 2009) (approving a multiplier of 2.6); *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) (finding a multiplier of 3.5 reasonable). Thus, the lodestar multiplier analysis confirms the reasonableness of the requested fee award. Settlement Counsel have obtained a very favorable benefit for the Class due to their persistent and effective representation, despite determined and resourceful opposition.

### (8)     Other Factors

There are additional factors that a court may consider in approving a fee request, including the lack of objection by the Class and public policy. *Camden I*, 946 F.2d at 775. As further confirmation of the reasonableness of the requested fee, the Notice mailed to approximately potential Class members, specifically stated that Settlement Counsel would apply for fees of $5 million or less. Class Members were informed that they could object to such an application, and to date there have been only two "objections" to the requested fee award. The limited number of

14

objections thus far is itself important evidence that the requested fee is fair. *See In re SmithKline Beckman*, 751 F. Supp. at 533; *Ressler*, 149 F.R.D. at 656 (noting that the lack of objections is "strong evidence of the propriety and acceptability" of the fee request).

In addition, public policy favors awarding sufficient fees to attorneys who achieve the voluntary resolution of complex and costly litigation such as this. Attorneys who bring class actions are acting as "private attorneys general" and are vital to the enforcement of [certain] laws; accordingly, public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions. *Ressler*, 149 F.R.D. at 657; *see also Mashburn v. Nat'l Health Care, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985). Thus, courts should award fees sufficient to provide the most capable attorneys with an incentive to step forward and represent clients in this type of litigation.

In sum, an examination of applicable law demonstrates that the fee requested by Settlement Counsel is reasonable. Given the result obtained, the contingent risk of this litigation, and the reasonableness of the fee requested, this Court should award Settlement Counsels' requested fee.

## IV.    REIMBURSEMENT OF EXPENSES SHOULD BE AWARDED

This Court should reimburse Settlement Counsel for expenses that were reasonably incurred to obtain the Settlement. *See, e.g., Ressler*, 149 F.R.D. at 657; *Behrens*, 118 F.R.D. at 549. Settlement Counsel (including those not appointed Co-Lead Counsel) have incurred expenses of $62,676.54 in connection with this Litigation, which are summarized in the accompanying declaration of Settlement Counsel. *See* Joint Declaration, Exhibit 1-5. This includes amounts incurred for court fees, legal research databases, copying, phone, and other customary expenditures.

The expenses incurred were reasonable and necessary to obtain the Settlement and do not include costs for overhead.

## V.  THE SERVICE PAYMENTS TO THE CLASS REPRESENTATIVES ARE FAIR AND   REASONABLE

In connection with their representation of the Class, the Class Representatives submit an application for Incentive Awards as compensation for their personal efforts on behalf of the Class.

The Notice provided that Class Counsel may request compensatory awards, or service payments, to be paid to the Class Representatives for their services in representing the Class in this Litigation.  Of the approximately 15 million notices mailed, to date not a single member of the Class has objected to the Incentive Payment awards.

The Class Representatives played an important and active role in the prosecution of this Litigation, and fully discharged their obligations, thereby helping to effectuate the policies underlying consumer protection laws.  Each Class Representative provided all necessary assistance to counsel during the prosecution of this case and actively participated in discovery, including in some instances depositions.

## VI.  CONCLUSION

The requested attorneys' fees and reimbursement of expenses are fair and reasonable and accordingly should be awarded by this Court.

### CERTIFICATE OF CONFERENCE

We hereby certify that we have conferred with Defendants' counsel, and state that they do not oppose the relief sought herein.

Dated:  July 28, 2011                                        By:  /s/ Brian Ku
                                                             Brian Ku (FL Bar # 610461)
                                                             Louis Mussman (FL Bar #597155)
                                                             KU & MUSSMAN, P.A.
                                                             12550 Biscayne Blvd., Suite 406

        Miami, Florida 33181
        Tel: (305) 891-1322
        Fax: (305) 891-4512
        brian@kumussman.com

        GOLOMB & HONIK, P.C.
        Richard Golomb
        Ruben Honik
        1515 Market Street, Suite 1100
        Philadelphia, PA 19102
        Tel: (215) 985-9177
        Fax: (215) 985-4169

        CARNEY WILLIAMS BATES PULLIAM
        & BOWMAN PLLC
        Allen Carney
        Randall K. Pulliam
        Tiffany Wyatt Oldham
        11311 Arcade Drive, Suite 200
        Little Rock, AR 72212
        Tel: (501) 312-8500
        Fax: (501) 312-8505

        KANNER & WHITELEY, LLC
        Allan Kanner (LA Bar #20580)
        Conlee S. Whiteley (LA Bar # 22678)
        M. Ryan Casey (LA Bar #30192)
        701 Camp Street
        New Orleans, LA 70130
        Tel: (504) 524-5777
        Fax: (504) 524-5763

        **Plaintiffs' Counsel**

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 28th day of July, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

        By: /s/ Brian Ku
            Brian Ku, Esq.