UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
C. A. No. 1-10-cv-23235-WMH

**AVID KARDONICK, JOHN DAVID,**
and **MICHAEL CLEMINS**, individually
and on behalf of all others similarly situated,

     Plaintiffs,
v.

**JPMORGAN CHASE & CO.** and
**CHASE BANK USA, N.A.**

     Defendants.
_____

**OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES
BY CLASS MEMBERS
DOUGLAS PALUCZAK, CHRIS SCHULTE AND LAURA FORTMAN
AND INCORPORATED MEMORANDUM**

 **COMES NOW**, Douglas Paluczak, 203 Runyon Ave. St. Louis, Missouri 63125, d.o.b. xx/xx/58, S.S. No. xxx-xx-6750, postcard verification #8v30sju, and Chris Schulte, 3266 Country Knoll Drive, St. Charles, Missouri 63303, d.o.b. xx/xx/70, S.S. No. xxx-xx-1145, Claim No. 420459, and Laura Fortman, 1217 Old Stone, O'Fallon, Missouri 63368, xx/xx/66, postcard verification I61N75L, Claim #417628, by and through their attorneys, and hereby file their OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES, objecting to the Stipulated Class Action Settlement and application for attorneys' fees by settlement counsel for the following reasons:

 **I. The amount requested as attorneys' fees by Counsel is excessive in view of the actual work performed, relief obtained, and the benefit provided to the class resulting in a windfall to Settlement Counsel that is not supported by Law.**

  **The actual work performed does not justify the attorney's fee claim.** Plaintiffs' counsel who are seeking some five million dollars in fees (whom we will hereinafter refer to, as they themselves do, as "Settlement Counsel," *See* Motion for Fees and Expenses, [DE 298] p. 1-17), devote pages of text to convince this Court and their class members that merely filing a Complaint and entering into settlement negotiations justifies 25% of the common fund, calculated by Settlement Counsel to be a fee award of Five Million Dollars. Class Counsel seeks

this amount despite having completed little formal discovery, opting instead for informal discovery with only settlement, not litigation on the merits, in mind.  In fact, the attorneys claiming the vast bulk of the lodestar calculated fees have just recently been admitted ***pro hac vice***, apparently for the sole purpose of getting paid.

Managing Class Action Litigation: A Pocket Guide for Judges, p. 21, 2010 3rd ed. (downloadable from the internet at http://www.uscourts.gov)  warns the judiciary to beware of settlements involving attorneys who are not directly involved in litigating class claims ("Sometimes, the settlement will be with an attorney who has not been involved in litigating the class claims that other attorneys have been pursuing, an especially suspicious circumstance")

Here, the class counsel seeking the vast bulk of the fees could only conduct informal discovery, as they (a) are not licensed to practice in this court and (b) were not even admitted ***pro hac vice*** until **after the settlement had been reached!**  Notice of the stipulated settlement was filed Dec 6, 2010 [DE 14] only 90 days after the action was filed; The Stipulation of Settlement itself was filed Dec 21, 2010; And the claimants of most of the fees were not admitted until April 2011 (Steven Owings, April 20, [DE 156], and Richard Golomb, Ruben Honik, James Allen Carney, & Curtis Bowman, on April 22, [DE 194] ), **some four months later!**

Indeed, the only Florida attorneys representing the Plaintiff at inception of this case on September 8, 2010, were Ku & Mussman, P.A., who claim a lodestar amount of only $40,875.00 (Exh. 4 of Motion in Support of Fees (hereafter, "Fee Motion," p. 2). The ones with the biggest claims: James Allen Carney, Lodestar claim $365,000 + $510,000 for others in his firm; [Ibid. Exhibit 1]; Richard Golomb, Lodestar claim of $345,000 [Ibid., Ex 2]; Ruben Honik, Lodestar claim of $305,000  [Ibid., Ex 2] are all April-Come-Latelys.

Recently admitted Settlement Counsel allege that "confirmatory discovery" occurred, and that "interviews" occurred, and "thousands of pages of documents" were reviewed along with regulatory materials (Fee Motion, p. 3).  What is absent is any mention of any actual litigation that occurred in this particular case that would somehow justify millions of dollars in attorneys fees.

Indeed, Settlement Counsel boasts that the real litigation, or controversy fought by the parties occurred in another suit where ". . . settlement counsel had spent much of the previous three years litigating similar claims to a favorable outcome in the Capital One Litigation."  (Fee Motion p. 8).  Suit was only filed in this case after concluding the previous litigation. Id. Moreover, Settlement Counsel does not reveal "what is in their wallet" as a result of such

litigation with Capital One, but on its face argues to this Court that payment of millions of dollars is justified because of the "favorable outcome" against Capital One. At best, it gives the appearance that Settlement Counsel is seeking recovery for work performed in another case. Ultimately, what Settlement Counsel did with Capital One is irrelevant for purposes of requesting fees from this Court. In reality, Class Counsel is seeking additional payment for work it has already been paid for.

At minimum, Settlement Counsel's reference to settlement of another similar case demonstrates that Settlement Counsel are involved in this particular case for no other purpose other than settlement, designated by the Pocket Guide at page 21 as an "especially suspicious circumstance." This does not begin to address the issues of Settlement Counsel seeking fees for work performed when they were not admitted to practice before this Court, who submitted Declarations that do not inform the Court of the times or days that such work was performed (Fee Motion, DE 298 Exh. 1 & 2).

Settlement Counsel cites the case of *Camden v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991), as supportive of their fee application, noting that such fees are determined based upon the "facts" of each case. (CC's Mot. Fees p.5). The facts of this case do not support the claimed attorney's fee award. Indeed they cast doubt on credibility of even the Lodestar claim amounts. The Court docket reflects that the only **substantive litigation pleading** between the parties in this case was (1) the filing of the Complaint on September 8, 2010[DE 1]; (2) the filing of Defendant's Motion to Dismiss on November 1, 2010 [DE 11]; which Motion Plaintiffs did not have to respond to, as (3) Plaintiff quickly filed an Amended Complaint [DE 15] on December 21. The Stipulation for Settlement [DE 16] was filed that same day.

In sum, the "facts" are that Settlement Counsel (all but two of whom were not admitted to practice in this court) filed a complaint copied from an earlier case (the *Capital One* litigation); and an amended complaint. They never responded to any dispositive motions, nor performed any formal or substantive discovery and promptly negotiated a settlement awarding themselves 25% of a Twenty Million settlement while leaving the class members with, as we shall see below a payment of less than $1.00 per class member.

Not only do the Court's docket entries fail to support Settlement Counsels' claims but so does the lack of documentation in their fee application. This Court's Local Rule 7.3 setting the standard for fee applications requires each application to not only list the hours claimed for each timekeeper **"a description of the tasks done during those hours;"** and to **"describe and**

**document with invoices all incurred and claimed fees and nontaxable expenses."** Those items do not appear in Settlement Counsel's application, and with good reason. The Court Docket shows that less than 90 days after filing this class action, Notice of Settlement was filed with the Court on December 6, 2010 [DE 14] and this case has been pending for the last 8 months in the posture of settlement with no other litigation activity. In short, not only do the facts but the **lack of facts** fail to support Settlement Counsel's claims.

### II. The settlement is unfair to the class members because it is insufficient.

Class Counsel argues this is a fair settlement, but avoid mentioning the fact that if each and every class member submitted a claim - and only made one claim - that such claimant would receive less than One Dollar. Class Counsel fails to direct the Court's attention (and that of the class members, by failing to post their Motion for Fees on the website designed to inform their class members, www.kardonicksettlememnt.com ) to the "administration cost" of $3,607,350.00 to be paid to the claims administrator who provided notice and is burdened with processing claims (Settlement Agreement, p.21-23; 23 G.; p. 17, VI. A, B). The Settlement Fund created for payment of claims is thus reduced by almost 18% just for providing notice and tracking the minimal pay-outs made to those class members who are not charged off, or whose accounts have been sold to third parties.

After administration costs, the fund available for distribution is actually only $16,392,650.00. If then further reduced by the sought for Five Million dollars in fees, the fund shrinks to only $11,392,650.00 to pay claims for a class consisting of *over 15 Million persons*. That is less than a dollar per class member. Such amount is woefully inadequate to compensate the class members in exchange for their agreement not to sue the Defendants in this case for the damages they have incurred for having the privilege of Defendants providing them with a "payment protection plan" for which they neither asked nor were able to utilize when needed; and is especially inadequate for those members who were further damaged when their accounts were "charged off" by Defendants or whose overdue accounts were sold to third parties for collection (Settlement Agreement [DE 16] . p. 16, par. 6; p. 25-D).

The common fund doctrine authorizes the trial court to deduct reasonable attorneys' fees from the damages recovered from the defendant, which are held in a common fund for the class pending distribution. *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 974 (11th Cir., 2002). This doctrine provides that "a person who at his own expense and for the benefit of persons in

addition to himself, maintains a successful action for the preservation, protection or creation of a common fund in which others may share with him is entitled to reasonable attorney fees from the fund as a whole." *Blue Cross Blue Shield Health Care Plan v. Gunter*, 541 F.3d 1320, 1323 (11th Cir., 2008)

Here, under the *Leonard* and *Gunter* Courts' definition of "common fund", the only funds "held in a common fund for the class pending distribution" and in which "others may share" are at best $16,392,650 out of the $20 Million, as $3.6 Million is for payment for the cost of notice and accounting and processing of the claims. Stated differently, the $3.6 Million Defendants have paid for giving notice to the class is not "damages" recovered from Defendants that are to be distributed to the class. Therefore, such amount should not be included in the calculation of the attorney's fees in accordance with the 11th Circuit's definition of "common fund."

Thus, any recovery by Settlement Counsel from the common fund that they created should be based upon the $16,393,650.00, and not 20 Million Dollars. So even if the Court determined Settlement Counsel were entitle to 25% of the common fund, that amount would be $4,098,162.50 and not Five Million Dollars.

**III. The settlement is unfair because the attorney fees to be paid Settlement Counsel is excessive in relation to the benefits accruing to the class.**

The Pocket Guide advises the court that a "hot button indicator" that a settlement is unfair exists when there is "an imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorneys fees is a prime indicator of collusion by settling attorneys." Pocket Guide "Reverse Auctions" and the like" 2010 ed. p. 20. Collusion: This case appears to be nothing more than one of collusion between Settlement Counsel and Defendant to pay Settlement Counsel an exorbitant fee in exchange for eviscerating the rights of the class members; protecting the Defendants from suit and damages, while leaving the class members with less than a Dollar each.

The Pocket Guide warns judges to be vigilant regarding Class Counsel who seek fees for what is nothing more than settlement of the case at hand, evidencing collusion or a "Reverse Auction" among the parties:

> A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in

> negotiating the settlement. Generally, the overpayment of the attorneys originates in an underpayment of what the class should receive based on an objective assessment of the merits of the class claims. (Pocket Guide, p. 21).

Settlement Counsel has conceded that the majority of the "work" performed occurred during settlement, or while negotiating settlement, and while they were not admitted to practice before this Court. Class Counsel identifies themselves in their Memorandum supporting their Motion for Attorneys Fees as "Settlement Counsel" (Memo. Support. Fees, p. 1-17), indicating to this Court that the only "work" performed was simply settling the case.

Moreover, as discussed below, Defendants are not prohibited or enjoined from conducting such unlawful activities in the future, and are free to prey upon their cardholders and bind them to unnecessary and worthless protection plans in the future. It is anticipated that a large percentage of the class will receive no funds, since their accounts were either charged off, or sold to third parties once they were not longer able to make their payments. At minimum, due diligence required discovery, particularly on the issue of the number of class members that would be subject to no recovery due to Defendants' labeling them as "Charged Off" or the account sold to third parties. Class Counsel claims that discovery occurred, including depositions, and yet the Court's docket fails to reflect any such activities. Notably, the lack of injunctive relief to the class demonstrates that whatever discovery was had, the class certainly did not benefit therefrom even if conducted informally (Memo. Support Fees p. 16).

The Pocket Guide also warns the judiciary to be leery of settlements that are presented without corresponding claims data, and advises that the recovery of class counsel should be based upon a percentage of the claims actually made:

> Your appraisal of the settlement should focus on the value actually distributed to the class-based on the number and percentage of class members who have filed a claim. . . Because there is no clear standard for predicting class response rates, consider calculating any attorney fee award as a percentage of the amount of the settlement fund that has already been distributed to claimants-even if that means deferring final determination of all or part of the fee award until the claims process is complete. (Pocket Guide, p. 16, 2010 ed).

Stated differently, the only basis for paying Class Counsel Five Million Dollars is if, and only if, claims are submitted in an amount requiring payment by the claims administrator of Twenty Million Dollars, and if this Court finds that paying the class members little more than

$1.00 each is fair in this settlement negotiated by attorneys who were not admitted to practice before this Court, and did not represent them at any stage of this litigation other than after settlement.

It is proper for courts to review the actual claims made and the amount paid before calculating an attorney's fee award. *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 (E.D. Pa. 2001); accord, *Sylvester v. CIGNA Corp.*, 369 F.Supp. 2d 34, 50-53 (D. Me. 2005). Here, the claims administrator is providing this Court with data concerning the number of claims filed and the aggregate amount of the claims to be paid approximately 15 days before the fairness hearing (Stlmt Agrmt, [DE 16] p. 27, XI), and this Court should refrain from entertaining the calculation of an attorney's fee until all the claims data is received, including the number of class members who were "charged off" or had their accounts sold, and therefore received nothing while releasing the Defendants from liability.

Under the circumstances described above, Settlement Counsel should not be compensated for work they performed that is related only to settlement of the case, particularly since they were not authorized to practice law in this Court until April of 2011, over eight (8) months after the case was filed. As such Settlement Counsel is entitled to a nominal fee, in line with the nominal work performed on behalf of the class.

**IV. The Proposed Settlement is unfair as it fails to provide injunctive relief preventing Defendants from engaging in the conduct alleged by Plaintiffs as harming the class members after settlement.**

Settlement Counsel, along with the other firms actually admitted to practice before the Court originally sought injunctive relief "Enjoining Chase from engaging in the deceptive, unlawful and unfair scheme described in this Complaint." (Complaint, p. 23, par. 106; Amended Complaint, p. 25, par. 110). Instead, it is the class members who are enjoined and prohibited from prosecuting their claims (Preliminary Approval Order, p.10, par. 28). Nothing in the Settlement Agreement proposed by the parties prohibits the Defendant from engaging in the very same scheme of activity that resulted in this suit being filed.

The Pocket Guide warns this Court that it should "Question whether injunctive relief will truly benefit class members in the case at hand." Pocket Guide, p. 21., 2010 ed. Injunctive relief would benefit the class. As it now stands, this Settlement does nothing to prevent the Defendant from "signing up" class members for yet another payment protection plan for which they bill

their account holders, and nothing prevents Defendant from denying claims that are made on such plans, or places any limitations on the exclusions Defendant can use to keep their account holders from obtaining the benefits of such payment protection plans. Class members get the chance to file a claim that might pay them a monetary award up to $60, $30 or $15 for each claim filed. This is nothing more than a "small award" that the Pocket Guide would have this Court avoid by instead promoting injunctive relief:

> In many cases, by putting an end to illegal practices, an injunction will benefit more class members than a small award. It will also avoid clogging the judicial system with the administration of small awards to thousand of class members. Pocket Guide, p. 21-22, 2010 ed.

And here, the class members number over fifteen million when the sums available to them is less than Twelve Million. Dollars. Putting a stop to the deceptively used "payment protection plan" is worth more to class members instead of a guarantee of less than One Dollar for each class member.

Looked at another way, the Defendants can recoup whatever money they have paid out by continuing to engage in the same deceptive practices that led to the filing of this suit against account holders who no longer have a remedy against Defendants, and have released them from such claims.

**V.  The Proposed Settlement is unfair as it fails to address the need for the creation of subclasses for the class members who were:1) denied claims under the payment protection plan; 2) did not make a claim for benefits under the payment protection plan but fit one or more qualifying groups; 3) merely unhappy with the payment protection plan; 4) members whose accounts were Charged Off and would receive only a credit and no payment under the settlement; and 5) members whose claims were sold to third parties.**

The Supreme Court has made clear that "[s]ettlement is relevant to a class certification." *In re Pet Food Products Liab. Litig. Jim W. Johnson And Dustin Turner*, 629 F.3d 333,341 (3rd Cir., 2010); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Consequently, a district court "may take the proposed settlement into consideration when examining the question of certification." *In re Prudential Ins. Co.*, 148 F.3d 283, 308 (3d Cir. 1998). In *Amchem,* the Supreme Court explained:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.

> But other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 341, *Amchem*, 521 U.S. at 620. Under such circumstances, the Supreme Court mandates that Class Counsel must show that "'the representative parties will fairly and adequately protect the interests of the class.'" Id. at 342. The adequacy of the representation is paramount to the Supreme Court on cases where certification has occurred for settlement purposes only. Id.  The dominant concern then becomes whether a proposed class "has sufficient unity so that absent class members can fairly be bound by decisions of class representatives. That dominant concern persists when settlement, rather than trial, is proposed." Id.

When appropriate, a class action may be divided into subclasses that are each treated as a class under [Rule 23]. Fed. R. Civ. P. 23(c)(5). In Re Pet Food Products Liab. Litig., 629 F.3d. at 343. Subclasses are appropriate "'[w]here a class is found to include subclasses divergent in interest.'" *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 343; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(c) advisory committee's note); see also *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (explaining that Amchem requires "a class divided between holders of present and future claims" to be "divi[ded] into homogeneous subclasses... with separate representation to eliminate conflicting interests of counsel"). Accordingly, "[a] district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately." *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 343; *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005).

Here, this case was certified only for purposes of settlement, and the following class definition followed, as set forth on the website www.kardonicksettlement.com:

> All Chase credit card holders who were enrolled in or billed for a Payment Protection Product at any time between September 1, 2004 and November 11, 2010.  Excluded from the class are all Chase cardholders whose Chase credit card accounts that were enrolled or billed for a Payment Protection Product were discharged in bankruptcy.

This proposed settlement is notable for who is not included in the release of claims

against the Defendants:  Only those cardholders who were discharged in bankruptcy.  As described, everyone else is a class member, so long as such persons were enrolled in or billed for a payment protection product anytime during September 1, 2004 and November 11, 2010.  This definition is overbroad, and releases claims of persons who have not even, or may never make a claim for payment protection plan benefits.

While on its face this may appear sufficient, but as they say "the devil is in the details" and Settlement Counsel ignored such critical details in failing to create the necessary subclasses described below, in their quick grab for $5 Million in fees from Defendants. This Court should establish the following subclasses under the holdings of *Amchem* and its progeny:

**Subclass A:  Class Members who submitted one or more claims under the payment protection products, and such claims were denied.**

Settlement Counsel created such subclass when it determined with Defendants for such class members that "If you made a claim for payment protection plan benefits and your claim was denied, it is estimated you will receive $60.00 before fees and expenses" (kardonicksettlement.com, FAQ-"What benefits can I receive as a part of this Settlement?")  In this scenario, this subclass includes only those class members who actually submitted a claim to Defendants-and such claim was denied.  It is understood that the damages of such class members would be readily ascertainable as a consequence of denying such claim, evidencing a greater likelihood of prevailing on the merits of this action as a class member.

Settlement Counsels' Amended Complaint does not allege that any of the three (3) named plaintiffs had claims that were denied, but the pleadings show that they were self-employed and retired and were enrolled in such payment protection plans. (Amended Complaint, p. 12; par. 58; p. 13; par. 62 & 64). Settlement Counsel must show that "'the representative parties will fairly and adequately protect the interests of the class.'" *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 341, *Amchem,* 521 U.S. at 620. The adequacy of the representation is paramount to the Supreme Court on cases where certification has occurred for settlement purposes only. Id.   Since the named plaintiffs in this suit never filed a claim for benefits under the payment protection plan(s), they are inadequate to represent parties who indeed had claims that were denied, and additional named class plaintiffs are necessary as Kardonick, David and Clemins fail to demonstrate the critical areas of typicality and commonality which must be established prior to certification of this as a settlement class.

Here, Settlement Counsel created several subclasses when they established the priority of

pay-outs, or the maximum amount of payout per claim. Under the analytical framework of Amchem described above, these class members have a present claim for relief, as to be distinguished from the next group, Subclass B, where such class members demonstrate they may have a future claim for relief, requiring this Court to establish subclasses for future and present claims, congruent with the Supreme Court's determination of when this Court should establish subclasses. Supra, *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 856 (1999). Under the holding of Ortiz, separate counsel must also be appointed for Subclass A and new class representatives selected, such as Objector Douglas Paluczak, whose claim was denied under the payment protection plan. Id.

**Subclass B: All class members who did not submit a claim under the payment protection plan, but were involuntarily enrolled in such product(s), and at any point during enrollment qualified as any of the following: self employed, retired, seasonally employed, employed less than 30 hours per week (or less than 15 hours per week for students), or left employment.**

Settlement Counsel created, or at least fully described this sub-class immediately after defining Subclass A above, with the language:

> If you were billed for or enrolled in a Chase payment protection product without your knowledge or consent and/or at any point during your enrollment you were self employed, retired, seasonally employed, employed less than 30 hours per week (or less than 15 hours per week for students), or forefeited your job (resigned) it is estimated you will receive $30.00 before fees and expenses.

(Kardonicksettlement.com. FAQ-"What benefits can I receive as a part of this Settlement?") Objector Laura Fortman is a class member under Subclass B. Under Ortiz, these class members have a future claim, in that they have not had a claim denied because it was not submitted, therefore requiring establishment of this subclass and appointment of new counsel. Named plaintiffs Kardonick, David and Clemins cannot remain as proper class representatives, as they meet the definition of being self-employed, and retired (Amended Complaint, p. 12; par. 58, p. 62; par. 62 & 64), but no allegation is raised that such persons were enrolled in the payment protection plan(s) "without their consent" as alleged as a requirement for receiving the $30.00 (Amended Complaint p. 12-13) and therefore fail to meet the *Amchem* test for adequacy of the representatives for this subclass.

Settlement Counsel essentially lumps everyone together who did not have a claim denied, and arbitrarily decided to pay up to $30.00 before fees and expenses, while this subclass has not

been harmed or damaged as Subclass A. Stated differently, Subclass B is releasing all its claims against Defendants even though such persons described above never made a claim for benefits under the payment protection plan.

Subclass B is distinctly different, and unique given none of such members need have made a claim for payment protection plan benefits in order to waive their rights to bring suit against Defendants in the future. In the alternative, such Subclass B may be determined unnecessary, and such persons not included in the settlement, and should be specifically excluded like the cardholders who have filed bankruptcy. The consequence of not either establishing this subclass or specifically excluding these persons from the settlement is that they are relinquishing their right to bring suit against Defendants, when they have not had a claim denied. This effectively eviscerates the rights of this Subclass, creating a group of persons who are barred from seeking relief against Defendants on claims they may not need to bring until after settlement, when they may need to invoke the "benefit" of the payment protection plan.

Subclass B is further prejudiced, because no injunctive relief exists that would compel the Defendants to process a future claim under the payment protection plan, leaving Subclass B without a remedy, and an uncertain future. Subclasses are appropriate "'[w]here a class is found to include subclasses divergent in interest.'" *In Re Pet Food Products Liab. Litig.*, 629 F.3d. at 343; *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 271 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(c) advisory committee's note); see also *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). As described above, Subclass B's interest diverge away from Subclass A, since they have not necessarily filed their claim under the payment protection plan, and if and when they do in the future, they have no mechanism to force Defendants to process such claim and are simply left with pennies on the dollar from Defendants that are not obligated to approve such a claim in the future, and have no remedy against Defendants as a consequence of the Settlement Agreement.

Subclass B would require that the Defendants agree to injunctive relief to process any payment protection plan claims made at any future date by such class members, so long as those payment protection plans show enrollment for class members during the 6 year time period established by the parties.

**Subclass C: All Class Members who do not fall within the definitions of Subclass A or B, and who are not satisfied with the payment protection products for which they were enrolled.**

Here, Settlement Counsel has attempted to sweep under the rug this vaguely defined group that number in the millions, consisting of persons simply unhappy with the payment protection plan. Without regard to measuring "unhappiness" as damages, they are described for payment purposes immediately below Subclass B, almost as an afterthought as:

> If none of the above categories apply to you, but you are not completely satisfied with the Chase Payment Protection Product(s) in which you were enrolled at any point between September 1, 2004 and November 11, 2010, it is estimated that you will receive $15.00 before fees and expenses.

(Kardonicksettlement.com, FAQ-"What benefits can I receive as a part of this Settlement?"). Subclass C must have separate representation and be either established as a subclass or excluded from this settlement. How does one quantify damages for "not completely satisfied with the payment protection products"? Settlement Counsel has arbitrarily assigned a value for settlement purposes of $15.00.

However, it is unclear what legal theory would allow this subclass to prevail on a claim based on the subjective personal experience of satisfaction or dissatisfaction. Settlement Counsels' Amended Complaint is devoid of any allegation that one or more named plaintiffs are "satisfied" or "unsatisfied" with the payment protection plans in which they are enrolled. Like Subclass B, these class members interest are completely divergent, because whether or not they were enrolled in a payment protection plan voluntarily is not an issue, nor whether or not they meet one or more of the criteria of Subclass B (retired, self-employed, etc.). Subclass C has the primary issue of promoting their interest in having the ability to file a claim under the payment protection plan, and not having coverage denied by Defendants, and not waiving their rights to file suit against Defendants if such coverage is denied.

Conflict between this Subclass and Groups A goes to the lack of injunctive relief, and the fact that Subclass C members may file a claim under the payment protection plan that they voluntarily or involuntarily are enrolled in the future, and no guarantee, or judicial mechanism exists for requiring Defendants to honor or process such claim under the protection plan, and yet they have all released their claims against Defendants concerning such protection plan.

In the alternative, Subclass C must be excluded from this settlement, since they cannot quantify or measure their damages which may or may not occur in the future. It is foreseen that these class members will make up the bulk of the "claims", and that these are the very persons that need relief tailored to aid them in the future, should they make a claim under the respective

payment protection plan(s). Notable, Defendants and Settlement Counsel fail to disclose how it was determined that such class members are "unsatisfied" or "satisfied".

For example, if you are "satisfied" with the payment protection plan, what do you do? According to Settlement Counsel, if you are "satisfied" then you do not submit your claim form, but you are part of the class, and you lose your legal rights to seek redress against Defendants if and when you ever make a claim for payment protection plan benefits. Or, fill out the claim form, and take a chance at getting $15.00 and still lose such rights. Essentially, these class members are part of the "class" for no other reason than releasing their legal rights against Defendants for claims they may have in the future related to non-payment of benefits under the payment protection plan(s). As if this were not murky enough to deny class certification, exclude such cardholders, or create yet another subclass, those persons described in Subclass D get zero recovery, yet are still subject to suit by Defendants and 3rd parties, but release all claims.

**Subclass D:  Any class member whose account(s) were "Charged Off" who otherwise would qualify under the definitions of Subclass A, B, or C.**

Here, Settlement Counsel is allowing Defendants to merely give a credit to those class member account(s) that were "charged off", resulting in zero benefits to such class members. Settlement Counsel touts this as some added benefit, or additional consideration, describing such class further on its website:

> Under the Settlement, Chase has agreed to create a Settlement Fund of twenty million dollars ($20,000,000), plus additional consideration in the form of credit to the unpaid balances of certain Charged-Off Class Members as stated in Section IX.D of the Settlement Agreement . . .

(Kardonicksettlement.com, FAQ-"What benefits can I receive as a part of this Settlement?") The Settlement Agreement fails to define the term "charge-off", but clearly shows such class members are still part of the class, even if class members' accounts were sold to 3rd parties for collection.

> "Charged-Off Account" means an account giving rise to a class member's membership in the Settlement Class if the account (1) had been charged off as of the Retrieval Date, and (2) had a balance due and owing to Chase as of the Retrieval Date. If, as of the Retrieval Date, an account had been sold and the balance due was owed to a third party and not to Chase, then the account is not a Charged-Off Account. For the avoidance of doubt, this Settlement shall not preclude Chase from selling any Charged-Off

Accounts that it would have sold in the absence of this Settlement.

(Stlmt Agrmt, p. 5).  A charged off account is defined generally as "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Black's Law Dictionary p. 227 (7th ed. 1999).  The Amended Complaint makes no mention of Plaintiffs Kardonick, David and Clemins as "Charged Off" accounts, and therefore they are inadequate to represent the interests of such class members in Subclass D.

Notable, these class members are still subject to having their accounts sold to 3rd parties, and also have no recourse against Defendants for denying claims under the payment protection plan (Subclass A), or simply having the misfortune of having "participated" in a payment protection plan meeting one or more classifications under subclass B, or are satisfied or dissatisfied with the payment protection plan (Subclass C).  Moreover, the language of in the Settlement Agreement is ambiguous as to whether or not an account sold to a 3rd party qualifies as part of the class, demonstrating the possibility of further litigation by such account holders against 3rd parties and Defendants.

Subclass D is the harmed most by Settlement Counsels' quick trip to Defendants' ATM for millions in Fees.  Subclass D waives its rights to bring suit for what is their damage by having their account placed in collections, damaging their credit, and arguably is the result of denying their payment protection plan coverage. Such class members receive zero Dollars and no Cents.  This is common sense, as it is likely that a person denied payment protection plan coverage would become a charged off account, because they are invoking  the benefits of the payment protection plan because they cannot make their payments. It is obvious that Subclass D has divergent interests to that of their brethren subclasses, as they are the ones who are directly damaged in a concrete, calculable manner.

Subclass D should have as its remedy that such accounts are considered paid/satisfied according to Defendants' records, and the adverse reporting to the numerous credit reporting agencies redacted.  Further, Subclass D should not be subject to having their accounts sold to 3rd parties who will then attempt to collect funds from such Subclass D members. In essence, Subclass D faces additional collection efforts from 3rd parties that Defendants profited from by selling their accounts, and they have no recourse against Defendants.  Such class members should either be completely excluded from settlement or a subclass created with new counsel appointed to protect the rights of such persons who were most harmed by Defendants' conduct

that gave rise to this litigation.  Injunctive relief should be entered that prohibits 3rd parties from collecting on such accounts, or in the alternative required Defendants to make payment to 3rd parties to satisfy such debts and release account holders from such obligation(s).

**WHEREFORE,** Objectors hereby pray that this Court deny the proposed Settlement stipulated into between the parties and enter the following additional relief:

(1) An Order overruling Settlement Counsels' application for attorney's fees of 5 Million Dollars and imposing an order that Settlement Counsel will receive a nominal fee or no fee;

(2) In the alternative, an Order compelling Settlement Counsel to submit their time records to this Court to determine what hours of work performed are compensable, as time devoted to settlement is not factored into the lodestar or the percentage of the fund method;

(3) An Order limiting the application of attorney fees to the common fund that was established without including the $3,607,350.00 of administration costs into such calculation;

(4) An Order withholding the calculation of the attorney's fees until this Court makes a determination of the number of claims actually submitted and paid, and the value of each claim;

(5) An Order removing Plaintiffs Kardonick, David and Clemins as the named class representatives;

(6) An Order Appointing Objector Douglas Paluczak as the named Class Representative for Subclass A;

(7) An Order appointing Laura Fortman as the named Class Representative for Subclass B;

(8) An Order providing sixty (60) days for appointment of class representatives for Subclasses C and D;

(9) An Order compelling Settlement Counsel to provide this Court and the parties with information concerning the number of persons who are participants in each subclass: a) who made a claim under the payment protection plan; b) meet the criteria set forth in Subclass B; c) are considered "satisfied" or "unsatisfied" with the payment protection plan; and d) the number of account holders who are "charged off" and whose accounts have been sold to 3rd parties or will be sold; and

(10) Any further relief necessary within the premises based upon the objections set forth above and herein.

Dated: August 19, 2011

*S/ Matt Weinstein*
MATT WEINSTEIN, fbn 113320
Co-Counsel for Objectors
Douglas Paluczak, Chris Schulte,  Laura Fortman
9200 South Dadeland Blvd., Suite 400
Miami, FL 33156
ph:305-670-5200

*S/ Paul M. Kade*
PAUL M. KADE, fbn
Co-Counsel for Objectors
Douglas Paluczak, Chris Schulte,  Laura Fortman
9200 South Dadeland Blvd., Suite 400
Miami, FL 33156
ph:305-670-6990

**Certificate of service**

I hereby certify that onAugust 19, 2011 , I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner shown below for those counselor parties who are not authorized to receive electronically Notices of Electronic Filing.

*S/ Matt Weinstein*
MATT WEINSTEIN, fbn 113320
attorney for Objectors Paluczak, Schulte &  Fortman

**Service List**

| | |
|---|---|
| Carney Williams Bates Bozeman & Pulliam, PLLC<br>11311 Arcade Drive, Suite 200<br>Little Rock, Arkansas 72212 | Golomb & Honik, P.C.<br>1515 Market St., Suite 1100<br>Philadelphia, P.A. |
| Covington & Burling LLP<br>1201 Pennsylvania Avenue NW<br>Washington, DC 20004 | |
| Ku & Mussman, P.A.<br>12550 Biscayne Blvd. #406<br>Miami, FL 33181 | |