UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

-----------------------------------------------------------x
DAVID KARDONICK, JOHN DAVID,
and MICHAEL CLEMINS, individually
and on behalf of all others similarly
situated,

Plaintiffs,

v.

JPMORGAN CHASE & CO. and                C.A. No. 1-10-cv-23235-WMH
CHASE BANK USA, N.A.,

       Defendants.
-----------------------------------------------------------x

## OBJECTION OF SEPTEMBER KATJE TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR

COMES NOW, SEPTEMBER KATJE ("Objector") Class Member to this action, by and through her undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, and gives notice of her counsel's intent to appear at the September 9, 2011, settlement approval hearing. Objector Katje represents to the court that she is a Class Member, qualified to make a claim for the proposed relief as set forth in the Notice of Class Action Settlement. The identification number contained on the postcard she received is 130F77B. Her address and telephone number are available upon request from her attorney of record.

Ms. Katje objects on the following grounds:

1.     The Settlement Agreement lacks critical information which must be determined before final approval, such as where unclaimed funds will go, and how objectors can lodge their objections.

1

2. The attorneys' fees seem extraordinarily high for a case which was settled after filing a complaint, upon subject matter which Class Counsel is admittedly very familiar with and was already compensated for.

3. The variations among state consumer laws must be addressed, as they undermine adequacy and predominance under Rule 23.

4. The large number of objections and opt-outs received by the Court should cause the Court to give heightened scrutiny to the proposed settlement.

## I. The Settlement Agreement is Incomplete

The Settlement Agreement provides for a $20 million gross settlement fund, minus $5 million for attorneys' fees, minus notice and administration fees. The remainder, an estimated $12 million, will be paid to the class (less than $1 per class member, in a 15 million person class). There has never been a case, however, in which a claims-made settlement fund was depleted entirely, as typical claims-made funds rarely exceed a 10% claims rate. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 370 F.Supp.2d 320, 321 (D.Me. 2005)(2% submission rate); *Buchet v. ITT Consumer Fin. Corp.*, 845 F.Supp. 684, 695 (D.Minn. 1994)(rejecting settlement with a 0.1% redemption rate); *Strong v. Bellsouth Telecomm., Inc.*, 173 F.R.D. 167, 169 (W.D.La 1997)(4.3% claims rate).

With this fact considered, there will likely be millions of dollars unclaimed from the settlement fund. Where does this money go? There is no information as to whether all claims will be held until after final submission, and then the fund will be exhausted on a pro-rata basis; or whether the excess funds revert to Defendants; or whether the funds should be made available on a *cy pres* basis to an appropriate 501(c)(3) organization, and how that organization would be selected and approved. This information is critical in determining whether the overall settlement is fair and reasonable to the class. This particular item must be sent back to settling parties to define, and then submit for court (and class) approval.

Another item missing from the Settlement Agreement is objectors. While the procedure for objecting was included in the long-form notice, the ability and process for objecting is completely missing from the Agreement. While this may be moot, it is still an important Rule 23 requirement which should have been addressed. This is also easily remedied by sending the agreement back to the settling parties.

## II. The Requested Fee's are Excessive

There is a $5 million complaint on file in this action.

The complaint was filed in September, 2010, an amended complaint was filed in December, and the case settled immediately thereafter. While Defendants filed a motion to dismiss, the issue was never briefed; rather, the case settled. There was no decision on the motion to dismiss, there were no appeals, there was no motion for summary judgment, there has never even been an answer.

Class Counsel asserts repeatedly that this case was hard-fought. On a scale of hard-fought litigation, judging by the docket, this Objector disagrees. A hard-fought case looks more like the *Capital One* case that Class Counsel just resolved: three years looks like more fighting than a complaint and a settlement.

Class Counsel makes much of the fact that it benefitted from the *Capital One* litigation it just resolved. Conceivably, however, Class Counsel was adequately compensated for its efforts in that case; to reap a 25% take on a case which settled after the complaint appears as exactly this: a windfall. Class Counsel already knew how to address this case, as they state in their declaration in support of fees: it was a "very efficient process," which "quickly cut to the crux of the matter." Joint Fee Declaration, Doc. 298, Exh. 1, p. 9, ¶18. If taken as true, then one is left wondering how Class Counsel spent more than 3344 hours, for a value of nearly two million dollars in fees. These two facts do not add up. Either it was quick and painless, or it was hard-fought (which is questionable given the immediate settlement, with no motion practice).

The questions before the Court, therefore, are: "Is this complaint worth $5 million?" and if so, "Is that fair to the class?" If the class would benefit if Class Counsel received less, perhaps the answer is no.

In this case, perhaps lodestar alone will adequately compensate Class Counsel, as it is a more reasonable representation of the effort put into this four-month long case. Recent Supreme Court opinion supports this approach: "there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Perdue v. Kenny A. ex rel. Winn,* 130 S.Ct. 1662, 1669 (2010). Given that Class Counsel admits that it already knows how to litigate this matter (Fee Declaration at 9), and that it was already compensated for its hard work in *Capital One,* there is no credible reason to believe that Class Counsel's results in this matter were extraordinary to the extent that their complaint is worth $5 million.

### III. Class Counsel glosses over the variations in state consumer protection laws, which are compelling state interests. This issue requires greater treatment, and perhaps the creation of subclasses.

Class Counsel filed a complaint based upon, *inter alia,* violation of state consumer fraud statutes, and posits that variations among state laws are essentially unimportant: "Following the Supreme Court's directive, numerous other courts have determined that common issues predominate in litigation involving oral and written misrepresentations in violation of state consumer protection laws." Motion for Preliminary Approval, Doc. 18, at 17. *AmchemProducts, Inc. v. Windsor,* 521 U.S. 591 (1997), however, addressed predominance problems with asbestos exposure; its statement regarding predominance is dicta and was not decided by the Court. The Supreme Court did decide, however, in *Ortiz v. Fibreboard Corp.* 527 U.S. 815 (1999), that one factor counseling against certification of the

4

settlement class was the fact that certain claimants "had more valuable claims . . . the consequence being an . . . instance of disparate interests. *Id.* at 857. The Court therefore held that when class members have claims of varying strength or merit, it is an *abuse of discretion* to approve a settlement that treats them all the same." *Id.*

In consumer fraud cases, there are claims more valuable than others across states. The differences can be highlighted most vividly in comparing a Montana resident to a New Mexico resident: in New Mexico, an aggrieved consumer is entitled to the greater of actual damages or $100, whichever is greater (N.M. Stat. Ann. §57-12-10(B)), while in Montana, a consumer can recover the greater of actual damages or $500 (Mont. Code Ann. §30-14-133W). (Doc. 98 at 3) This makes a claim in Montana five times more valuable than a claim in New Mexico and more valuable still than in a state with no enhanced damages for consumer injury. This disparity undermines, and perhaps defeats, adequacy, as well as predominance, under Rule 23.

This does not mean that a class cannot be nationally certified; it just means that the parties must conduct a state-by-state analysis to ensure that each state's laws are respected: "State consumer protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules." *In re Bridgeston/Firestone Inc. Tires Prod. Liab. Litig.*, 288 F.3d 1012, 1017 (7th Cir. 2002). The court in *In re Grand Theft Auto Video Game Consumer Litigation*, 251 F.R.D. 139 (S.D.N.Y. 2008), emphasized the importance of applying different state laws across one case:

> The predominance inquiry – as distinguished from the trial-manageability inquiry – should not be watered down merely because the parties have entered a proposed settlement. *Amchem Products,* 521 U.S. at 620; *Denney v. Deutsche Bank AG* 443 F.3d 253, 270 (2d Cir. 2006); *In re Warfarin [Sodium Antitrust Litigation]* 391 F.3d 516, 529-30 (3d Cir. 2004). Under the facts of this case, differences in the applicable state laws go to the heart of Settlement Class members' substantive claims, and thus undermine the Settlement Class' cohesiveness. Therefore, certification of the Settlement Class is especially inappropriate, despite the existence of the Settlement.

5

251 F.R.D. at 159. Judge Wohl Kram determined that "each state has a compelling interest in having its own consumer-protection laws applied to transactions occurring within its borders. Further, given the powerful state interest in regulating consumer purchases within the state's border, *see, e.g., In re Relafen,* 221 F.R.D. at 278, the state of purchase possesses the greatest interest in having its laws applied to Settlement Class members' claims." 251 F.R.D. at 150. The court in *In re Relafen,* 221 F.R.D. 14, 346 F.Supp.2d 349 (D.Mass. 2004), was able to certify a nationwide class, creating six separate subclasses, each of which observed the home state's laws.

Accordingly, the predominance inquiry should be sent back to the settling parties to analyze and give due credit to each state's consumer protection laws, which constitute a compelling interest, which analysis conforms to the Supreme Court's holding in *Ortiz*.

## IV. The large number of objectors and opt-outs call into question the adequacy and fairness of the settlement.

The docket report in this matter is light on pleadings, and heavy on letters from class members, commenting on problems with the settlement. In fact, it appears that more than 250 class members have taken the time to voice their objections and/or opt-outs from this settlement. Far from the twelve opt-outs or objections claimed by Class Counsel, 250 is a significant number, regardless of class size. While Class Counsel would like to marginalize this number in terms of the percentage of the class, the percentage analysis is not a true measure of the overall sentiment. More than 250 class members have varying problems with the settlement. The Court, as the class' fiduciary, must examine the complaints and require the settling parties to address the issues where necessary.

## V. Joinder in Other Objections

These Objectors adopt and join in all other well-taken, bona fide objections filed by other Class Members in this case and incorporate them by reference as they appeared in full herein.

## VI. Conclusion

For the foregoing reasons, this Objector urges the Court to sustain their objections and modify the settlement.

WHEREFORE, this Objector respectfully requests that the Court:

a. Upon proper hearing, sustain these Objections,

b. Upon proper hearing, enter such Others as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement;

c. Award an incentive fee to these objections for their service in examining the fairness of this settlement; and

d. Award attorney fees to Objector's counsel for their role in improving the settlement.

Dated: August 19, 2011

Respectfully submitted,

By: _____/s/_____
    Jeff M. Brown, Esq.
    Florida Bar #197912
    Attorney for SEPTEMBER KATJE

By: _____/s/_____
    Patrick S. Sweeney, Esq.
    Florida Bar #593486
    Attorney for SEPTEMBER KATJE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this _19th_ day of August, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/EFC. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

        LAVALLE, BROWN & RONAN, P.A.
        Attorneys for SEPTEMBER KATJE
        750 South Dixie Highway
        Boca Raton, Florida  33432
        (561) 395-0000
        (800) 795-0995


        _____/s/_____
        JEFF M. BROWN
        FLORIDA BAR NO.: 197912
        JBrown@LavalleBrown.com

## SERVICE LIST

*Case Name* Kardonik/David/Clemins v. JP Morgan Chase & Chase Bank

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 10-cv-23235 – WMH (S.D. Florida)

Jeff M. Brown, Esq.
Lavalle, Brown & Ronan, P.A.
750 South Dixie Highway
Boca Raton, FL  33432
Telephone:  561-395-0000
Fax:  561-395-0000
E-mail:  Jbrown@LavalleBrown.com &
         Cmartin@LavalleBrown.com
Co-Counsel for SEPTEMBER KATJE

Patrick S. Sweeney, Esq.
Sweeney & Sweeney, S.C.
440 Science Drive, Suite 101
Madison, FL  53711
Telephone:  608-238-4444
Fax:  608-238-8262
E-mail:  Patrick@sweenlaw.com
Co-Counsel for SEPTEMBER KATJE


Carney William Bates Bozeman & Pulliam, PLLC
11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212

Zachary Parks
Covington & Burling LLP
1201 Pennsylvania Avenue NW
Washington, DC  20004

Thomas L. Cox, Jr.
4934 Tremont
Dallas, TX  75214
Telephone:  469-531-3313
Fax:  214-855-7878
Tcox009@yahoo.com
*Attorney for Objectors*