**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**DAVID KARDONICK, JOHN DAVID,**
**and MICHAEL CLEMINS, individually**
**and on behalf of all others similarly**
**situated,**

                              **Plaintiffs,**

   **v.**

**JPMORGAN CHASE & CO. and**
**CHASE BANK USA, N.A.**

                              **Defendants.**

**C. A. No. 1-10-cv-23235-WMH**

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**</u>
<u>**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>
<u>**AND PLAN OF ALLOCATION**</u>

## TABLE OF CONTENTS

**PAGE**

INDEX OF EXHIBITS ....................................................................................................ii

I.     PRELIMINARY STATEMENT ..........................................................................1

II.    HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION ............................2

       A.   History and Background..............................................................2

       B.   The Proposed Settlement.............................................................7

III.   THE PROPOSED SETTLEMENT IS FAIR AND ADEQUATE..........................................9

       A.   The Court Has Personal Jurisdiction Over the Settlement Class Because the  Class Received Adequate Notice and an Opportunity to be Heard ..........................................9

       B.   The Law Favors and Encourages Settlements .............................................10

       C.   The Role of the Court in Determining Whether to Approve a Class Action  Settlement ....................................................................................................11

       D.   The Settlement Agreement Here Resulted from Arm's Length Negotiations  and was not the Product of Collusion......................................................................12

       E.   The Settlement Satisfies the Criteria For Approval......................................14

IV.    THE NOTICE TO THE CLASS SATISFIED DUE PROCESS ...........................................26

       A.   The Best Practicable Notice Was Provided to the Class ................................27

       B.   The Notice Program Included Internet Placement and Publication.............................27

       C.   The Class Notice Was Reasonably Calculated to Inform Class Members of  Their Rights ....................................................................................................28

V.     THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS FAIR AND  REASONABLE AND SHOULD BE APPROVED ................................................................29

VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED.....................................................29

       A.   The Proposed Settlement Class is Sufficiently Numerous............................................30

       B.   Common Questions of Law and Fact Exist....................................................32

       C.   The Representative Plaintiffs' Claims are Typical of the Claims of the  Settlement Class Members ....................................................................................................34

       D.   Representative Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately  Represent the Interests of the Class.....................................................................36

       E.   The Settlement Class Satisfies the Requirements of Rule 23(b) ................................38

VII.   THE OBJECTIONS BY CLASS MEMBERS SHOULD BE OVERRULED ....................41

VIII.  CONCLUSION ....................................................................................................42

## **INDEX OF EXHIBITS**

1.      Stipulation of Settlement

2.      Joint Declaration of Richard Golomb and Allan Carney

3.      Declaration of Jonathan B. Marks

4.      Declaration of Ronald Bertino (with attachments)

5.      Objectors' Chart (with attachments)

## I.    PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiffs respectfully request this Court to grant (i) final approval of the proposed Stipulation and Agreement of Class Action Settlement (the "Settlement") embodied in the Settlement Agreement [Dkt # 16]; (ii) final approval of the method and form of notice provided to the class members; (iii) final certification of the Class for settlement purposes; and (iv) final approval of the proposed Plan of Administration and Distribution [Dkt # 16-9].  As detailed herein and in the accompanying Joint Declaration of Richard Golomb and Randall Pulliam in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Plan of Allocation ("Joint Declaration") and the Declaration of Jonathan B. Marks ("Marks Declaration") [previously attached to Plaintiffs' Motion to for Attorney Fees, at Dkt # 298-7], this Settlement is the product of extensive investigation and discovery, aggressive litigation and arm's-length negotiations and takes into account the significant risks specific to this case, including the substantial risks of continued litigation.  It was negotiated by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defense with the assistance of an experienced, skilled mediator.

In consideration of the foregoing, Plaintiff and Class Counsel firmly believe that this Settlement is an outstanding result for the Class, clearly satisfies the standard of approval set forth by the Eleventh Circuit, and is unquestionably fair, reasonable and adequate.  Furthermore, the Plan of Administration and Distribution provides a practical, efficient method for an equitable distribution among Class Members and is necessarily fair, reasonable and adequate. What is more, the Settlement is in the best interest of the Class, and this Court should grant final approval of the Settlement in this Action at this time.

## II.      HISTORY, BACKGROUND AND SETTLEMENT OF THE ACTION

### A.      History and Background

This case is a class action brought against Defendants JPMorgan Chase & Co. ("JPMorgan") and Chase Bank USA, N.A. (together with its predecessor banks, "Chase," and collectively with JPMorgan as "Defendants" or "Chase"), on behalf of a class of Defendants' credit cardholders for contract breach; violations of the Truth in Lending Act; breach of the Covenant of Good Faith and Fair Dealing, violations of state deceptive trade practices acts; and violations of common law (injunctive relief and restitution) in connection with Defendants "Payment Protection Products," an amendment to Defendants' credit card customer agreement that provided for debt cancellation under certain circumstances.  More specifically, *inter alia*, this lawsuit alleged that the restrictions on benefits offered by Defendants' Payment Protection Products that are based on customers' health or employment status were not adequately disclosed to customers before they enrolled in Payment Protection and that the process for obtaining benefits under Payment Protection was made so difficult by Defendants, that the product is essentially worthless.  Further, Defendants involuntarily enrolled consumers in the Payment Protection plan without their knowledge or consent.

As set forth in the Stipulation, the following three class actions (the "Related Actions") were filed against Defendants beginning on or about September 8, 2010:

(1)    *Kardonick v. JPMorgan Chase & Co., et al.*, No. 1:10-cv-23235-WMH, Southern District of Florida;

(2)    *David v. JPMorgan Chase & Co., et al.*, No. 4-10-cv-1415, Eastern District of Arkansas; and

(3)    *Clemins v. JPMorgan Chase & Co., et al.*, No. 2:10-cv-00949-PJG, Eastern District of Wisconsin.

For purposes of Settlement, these cases were consolidated into the *Kardonick* matter in the United States District Court for the Southern District of Florida.

On or about November 1, 2010, the Chase Defendants filed a motion to dismiss in the *Kardonick* matter [Dkt # 11]. In their Motion to Dismiss, Defendants argue that Kardonick's state consumer protection claims are preempted by federal law for national banks and are not actionable. Defendants also challenged which state law to apply and alleged that in accordance with that law, Kardonick's other common law claims should be dismissed for failure to sufficiently identify the provision of the contract allegedly breached. Defendants further argued that Kardonick's unconscionability, unjust enrichment and restitution or injunctive causes of action fail to state a viable claim against Defendants. Finally, Defendants challenge the choice of Chase entities that Kardonick sued. Plaintiffs anticipate that similar motions would have been filed by Defendants in the other Related Actions in the absence of the Settlement.

At or around that same time, but subsequent to the filing of all of the Related Actions, counsel for Defendants contacted Settlement Counsel to inquire whether settlement negotiations would be productive. As a result of this initial inquiry, counsel conducted numerous follow-up telephone conferences, and attended a lengthy pre-mediation meeting in New York City, New York with defense counsel and representatives of Defendants. *See* Joint Declaration of Carney and Golomb [Dkt # 298-1] at ¶ 11. These meetings culminated in a two-day mediation on November 10 and 11, 2010 facilitated by a reputable and skilled mediator, Jonathan B. Marks, in Washington, D.C. *See* Marks Declaration at ¶ 14.

Prior to and during the mediation process, counsel for the Defendants provided Settlement Counsel access to non-public information and documents regarding the companies and their Payment Protection Products. This exchange, coupled with the extensive investigation and research already conducted by Settlement Counsel in the present matter (and in the previously-settled *Capital One* litigation involving Payment Protection), allowed Settlement

Counsel to fully assess the strengths, weaknesses and valuation of both Plaintiffs' claims, and the potential defenses available to Defendants.  In determining to settle this matter, Plaintiffs and Plaintiffs' Counsel evaluated the investigations and considered the substantial expense and length of time necessary to prosecute this matter through pre-trial, trial and post-trial motions, and likely appeals, taking into account the significant uncertainties in predicting the outcome of this type of class litigation.  Plaintiffs' Counsel recognized the uncertainty and the risk of the outcome of complex litigation such as this, as well as the difficulties and risks inherent in the trial of the case.  Plaintiffs desired to settle the claims of the Class against Defendants on terms and conditions that would provide substantial, immediate benefits to the Class.  Defendants, while denying all allegations of wrongdoing or liability, also desired to settle and to terminate all existing or potential claims against them, without in any way acknowledge any fault.

Against this background and with the aid of an experienced mediator, the parties were able to effectively engage in informed, arm's length negotiations.  The negotiations involved experienced counsel on both sides who vigorously represented their respective parties' positions.  At the end of the second day of mediation, the parties reached an agreement in principle and executed a Memorandum of Settlement outlining the agreement in principle reached by the parties.  Over the next two weeks, the parties continued negotiations and worked in good faith to use the Memorandum of Settlement to develop written, mutually acceptable settlement papers.  Subsequently, on November 22 and 23, 2010, the initial mediation session was followed by a second meeting.  On those dates, counsel for all parties met in Washington D.C., and worked to finalize the settlement papers.  By the beginning of December, an agreed-upon settlement in principle was reached, and Plaintiff filed a Notice of Settlement with the Court on December 6,

2010 [Dkt # 14].   These steps led to the execution of the Stipulation of Settlement, dated December 20, 2010.

Accordingly, on December 21, 2010, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement [Dkt # 17], wherein the parties requested the Court to enter an Order (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying the class for settlement purposes; (iii) staying all obligations in the Litigation; (iv) directing that notice of the proposed Settlement be given to members of the Class in the proposed form and manner; and (v) scheduling a hearing before a Court to determine whether the proposed Settlement should be finally approved.  *Id.*  In support of the Joint Motion for Preliminary Approval of the Class Action Settlement, Plaintiffs submitted a memorandum of law in support. Dkt # 18.  In addition, Plaintiffs filed an Amended Complaint with the Court [Dkt # 15].  Upon review and consideration of the Amended Complaint, the Settlement Agreement, the Joint Motion for Preliminary Approval of Class Action Settlement, Plaintiffs' memorandum of law in support thereof, as well as supporting declarations and the entire record, the Court entered an Order dated February 2, 2011 (the "Preliminary Approval Order")[1], finding that the proposed Settlement was within the range of possible approval, provisionally certifying the Settlement Class, appointing Plaintiffs David Kardonick, John David and Michael Clemins as representatives of the Settlement Class, approving Golomb & Honik, P.C. and Carney William Bates Bozeman & Pulliam, P.L.L.C. as Settlement Class Counsel, and setting a fairness hearing on September 9, 2011 at 10:30 a.m.  *See* Dkt # 24 at 1 and ¶¶ 6 and 22, respectively.

---

[1]  See Dkt #23. The Court corrected the Order on February 11, 2011 [Dkt #24] to include a date for the requested Fairness Hearing.

The Amended Complaint was agreed-upon and filed to consolidate the Related Actions into the *Kardonick* matter in the Southern District of Florida.  As set forth in the Amended Complaint and confirmed in the Court's Order, the Class is defined as follows:

> All Chase credit card holders who were enrolled in or billed for a Payment Protection Product at any time between September 1, 2004 and November 11, 2010. Excluded from the class are all Chase cardholders whose Chase credit card accounts that were enrolled or billed for a Payment Protection Product were discharged in bankruptcy.[2]

Amended Complaint at ¶ 68 [Dkt # 15] and Corrected Order at ¶ 4(a) [Dkt # 24].

In accordance with the Court's Preliminary Approval Order, Defendants provided a list of class members to the settlement administrator on February 9, 2011.  *See* Bertino Decl. at ¶ 2. Notice was mailed to over 15 million individuals between March 31 and April 8, 2011.  *Id.* at ¶¶ 3-5.  In addition, a webpage, www.KardonickSettlement.com, was created to give Settlement Class Members access to important case-related documents such as the operative Complaint, the Settlement Agreement, the Notices, the Court Orders and the Claim form.  The court-approved Notice mailed to Settlement Class members provided an overview of the litigation, a summary of the proposed Settlement, and informed Settlement Class Members of their rights and options in relation to proposed Settlement.  Plaintiffs' Counsel have received and responded to thousands of questions and inquiries from Settlement Class Members.  *Id.* at ¶¶ 10-11.  To date, out of the entire mailing of 15,139,676 notices, 1,079,084 have been determined to be undeliverable by the Class Administrator (approximately 7% of all notices mailed), 3,862 individuals have requested to be excluded (approximately .024% of all notices mailed), and 24 individuals have formally objected to the Settlement. *Id.* at ¶¶ 7, 11 (objections handled separately in section VII *infra*).  In

---

[2] Member of the Class include those card holders "of Chase-issued credit and charge card accounts and Chase-issued business cards and private label cards such as Chase-issued Toys "R" Us, Khol's, TJMaxx, Best Buy or Circuit City cards. *See* Legal Notice, Dkt #16-5.

addition, summary Notice was published in the USA Today National Edition, and of course, copies of the Notice and Proof of Claim forms were posted on the Claims Administrator's website which is referenced in the Notice.  *Id.* at ¶ 6.

**B.**    **The Proposed Settlement**

In resolving all claims in the Litigation, the Defendants agreed to pay $20 Million in cash into a Settlement Fund for the benefit of the class.  This total amount includes Advanced Notice Costs of $3,607,350.00 to effectuate notice.  *See* Bertino Decl. at ¶ 5 (deposited on February 24, 2011); Stipulation and Settlement [Dkt # 16] at VI(A).    In compliance with the terms of the Settlement, on March 2, 2011, Defendants paid the remainder of the $20 Million in cash into a Settlement Fund and by April 8, 2011, all Notices were mailed to Class members.  *See Id.*

An individual meeting the above referenced criteria as defined in the Amended Complaint, ¶ 68 (referred to as an "Eligible Class Member") is entitled to participate in the Settlement, as long as he or she provides a timely and correct Claim Form.  The Long Form Legal Notice [Dkt # 16-5] establishes four separate "categories" for Eligible Class Members:

- You can make a claim for an amount estimated to be **$60** (before fees and expenses) if you applied for payment protection benefits and were denied those benefits;

- You can make a claim for an amount estimated to be **$30** (before fees and expenses) if you were enrolled or billed for a payment protection product without your knowledge or consent;

- You can make a claim for an amount estimated to be **$30** (before fees and expenses) if you were self-employed, retired, seasonally employed, or employed less than 30 hours per week (or less than 15 hours per week for students), or voluntarily forfeited your job (resigned) at some point during your enrollment in a Chase payment protection product;

- You can make a claim for an amount estimated to be **$15** (before fees and expenses) if you were not completely satisfied with the payment protection product in which you were enrolled.

The categories are reflected in easy-to-understand boxes for Eligible Class Members to check off on the Claim Form. *See* Dkt # 16-6. If an Eligible Class Member checks one or more of the boxes on the Claim Form under the sentence that says, "**Please check all boxes that apply. If you do not check at least one box your claim will not be paid**," he or she will receive payment or account credit.[3]

In addition, the following information must be filled out by Class Members:

3.     Please check the box next to the statement that is correct about you:

☐     I **have** been discharged in bankruptcy for the Chase account(s) that were enrolled in a Payment Protection Product.

☐     I **have not** been discharged in bankruptcy for the Chase account(s) that were enrolled in a Payment Protection Product.

If the Eligible Class Member checks the box on the Claim Form that says, "I **have** been discharged in bankruptcy . . . . ," the Eligible Class Member is not entitled to a payment or credit.

For Eligible Class Members who have an open account, Defendants shall credit the amounts set forth above to that account. If an Eligible Class Members has an open account, but closed the account(s) in which he or she enrolled in Payment Protection, Defendants may, in their sole discretion, elect to pay the Eligible Class Member the appropriate amount by check rather than by crediting the open account(s). For Eligible Class Members who closed accounts in good standing (*i.e.,* with a zero balance), Defendants shall pay the Eligible Class Members the appropriate amounts by check.

---

[3] The Settlement Administrator will determine the validity of claims as well as the status of an Eligible Class Members as falling into categories. For purposes of determining the validity of claims, all account records or data furnished to the Settlement Administrator by Chase shall be deemed to be correct. After all claims are complied and tallied, the Settlement Administrator determined that 214,254 valid, timely claims encompassing 241,711 accounts were submitted. *See* Bertino Decl. at ¶13.

For Eligible Class Members who have "Charged-Off Accounts," those that have been marked as closed or delinquent and still have a balance due and owing to Chase, upon Final Approval, Class Counsel shall instruct the Settlement Administrator to provide Defendants with a list ("the List") of those accounts.  *See* Stipulation and Settlement at IX.D.  If the Creditable Amount is less than or equal to the balance due to Defendants, then Defendants shall, within sixty (60) days of the date the List is provided ("List Date"), credit the Creditable Amount against the balance due on the Charged-Off Account(s).  *See id.*

This is a settlement of claims arising throughout the nation for a period beginning on September 1, 2004.  In most states, the statutes of limitations have expired for these claims, and in many states, deceptive trade practices claims for consumer class actions cannot be certified. By settling this matter, Defendants have agreed not to pursue their potential statute of limitations defense for Eligible Class Members.   Based on this fact alone, Plaintiffs have achieved a remarkable result for the national class.

## III.   THE PROPOSED SETTLEMENT IS FAIR AND ADEQUATE

### A.   <u>The Court Has Personal Jurisdiction Over the Settlement Class Because the Class Received Adequate Notice and an Opportunity to be Heard</u>

In addition to having personal jurisdiction over the named plaintiffs, who are parties to the Litigation and agreed to serve as representatives of the Class, the Court also has personal jurisdiction over all members of the Settlement Class because the Class has received the requisite due process as specified by the United States Supreme Court.  For a court to exercise jurisdiction over the claims of absent class members:

> it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the

> pendency of the action and afford them an opportunity to present
> their objections.'

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985) (*quoting Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314-15 (1950)); s*ee also In re Prudential Ins. Co. of Am. Sales Practices Litig*., 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). These due process protections were provided with respect to the settlement.

## B. The Law Favors and Encourages Settlements

There is a strong policy favoring compromises that resolve litigation. *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989). It is, therefore, "the policy of the law generally to encourage settlements." *Sherin v. Gould*, 679 F. Supp. 473, 474 (E.D. Pa. 1987) (quoting *Florida Trailer and Equipment Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960)). "In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong v. Board of School Dirs*., 616 F.2d 305, 333 (7th Cir. 1980)(citation and internal quotation marks omitted); *see also In re U.S. Oil & Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992)("Public policy strongly favors the pretrial settlement of class action lawsuits."). Indeed, as the court stated in *Dekro v. Stern Bros. & Co*., "[s]ettlement is the preferred method for the disposition of complex litigation." 571 F. Supp. 97, 101 (W.D. Mo. 1983); *see also In re U.S. Oil and Gas Litig*., 967 F.2d at 493; *In re Warner Communications Sec. Litig*., 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

-10-

C.   **The Role of the Court in Determining Whether to Approve a Class Action Settlement**

Rule 23(e) requires court approval of any voluntary compromise of a class action and requires notice regarding the proposed settlement be provided to all class members.  In this regard, approval of the settlement is left to the discretion of the court.  *See Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)("Determining the fairness of the settlement is left to sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of the discretion.")(citations omitted); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 538 (S.D. Fla. 1988)(trial court entitled to rely on the judgment of experienced counsel for the parties).  Thus, when exercising its discretion, a court should proceed in a manner consistent with the strong public policy favoring compromise and settlement.  *See Raines v. State of Florida,* 987 F. Supp. 1416, 1418 (N.D. Fla. 1997)("[I]n considering the fairness of a proposed settlement of a class action, the court must remember that compromise is the essence of settlement.") (quoting *Bennett,* 737 F.2d at 986).

 Because "[c]ompromise is the essence of settlement," courts "should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'"  *Woodward v. Nor-Am Chem. Co.,* No. 94-0780-CB-C, 1996 U.S. Dist. LEXIS 7372 at *50 (S.D. Ala. May 23, 1996) (quoting *Cotton,* 559 F.2d at 1330); *see also Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983). The court in *Woodward* emphasized this idea by further stating that "[a] settlement implicitly means settling for less than all that is sought; it is a reasoned choice of a certainty over a gamble, the certainty being the settlement and the gamble being the risk that comes with going to trial." *Woodward,* 1996 U.S. Dist. LEXIS 7372 at *50 (citation omitted).  As such, at a fairness

hearing, the court is charged with reviewing the terms of the settlement to ensure that the agreement reached is fair, adequate and reasonable, and not the product of collusion. *See Bennett*, 737 F.2d at 986 ("It is abundantly clear, however, that in order to approve a settlement, the district court must find that the settlement is 'fair, adequate and reasonable and is not the product of collusion between the parties.'" (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1997)); *In re Domestic Air Transportation Litig.*, 148 F.R.D. 297, 305 (N.D. Ga. 1993); *Isby v. Bayh*, 75 F.3d 1191, 1196-97 (7th Cir. 1993)(because federal courts favor settlement, the court's inquiry in prisoners' rights case was limited to determining whether the class settlement was fair and reasonable).

### D.   The Settlement Agreement Here Resulted from Arm's Length Negotiations and was not the Product of Collusion

As an initial matter, courts recognize an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations. *See 2 Newberg on Class Actions*, §11.41 at 11-88 (3d ed. 1992); *see also Annotated Manual for Complex Litigation Third*, § 30.42 at 276 (2000) ("a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery"). Such negotiations between counsel possessed of "experience and ability . . . necessary to effective representation of the class's interests," ensure fair resolution. *Id.; see also In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1328, 1333 (N.D. Ga. 2000); *Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. at 312-13. Absent collusion, a court should give significant weight to the judgment of counsel:

> The settlement must be the result of arm's length negotiations, and plaintiffs' counsel must be experienced and have engaged in adequate discovery necessary to represent the class effectively. A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of this type of a negotiating process and when the number of objectors is small.

*Chatelain v. Prudential-Bache Sec. Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992); *see also Weinberger*, 698 F.2d at 74; *Behrens*, 118 F.R.D. at 538-39 (a court "can rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'") (citing *Cotton*, 559 F.2d at 1330), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Warren*, 693 F. Supp. at 1060 ("[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.").

The Settlement in this Action was reached only after extended arm's length negotiations among counsel for the parties, without a trace of collusion.  Settlement was reached after two intensive days of mediation before an experienced, impartial mediator.  *See* Mark Declaration at ¶ 14.  The Court specifically reviewed this settlement for possible collusion at the request of interveners and held that there was none, and that there was no need to permit discovery as requested by the proposed interveners.  *See* Order Denying Motion to Intervene [Dkt # 213]. Class Counsel, who are experienced in class action litigation, zealously and vigorously represented the interests of the Class throughout negotiations.  In a similar vein, Defendants are represented by highly regarded lawyers that skillfully negotiated on behalf of their clients. Moreover, settlement negotiations were conducted through a certified mediator, Jonathan B. Marks, who attests that "each of the Parties was represented by experienced and competent counsel, willing, if necessary, to litigate the matter to conclusion."  Marks Declaration at ¶ 18. He also attests that he "observed nothing that suggested any collusion or other untoward behavior on the part of counsel for any Party."  *Id.* at 21.  As such, the Settlement enjoys a presumption that it was reached without collusion and is fair, adequate and reasonable.  *See Strang v. JHM Mortgage Securities* L.P., 890 F. Supp. 499, 501-02 (E.D. Va. 1995) ("[T]he Court is persuaded that Plaintiffs' counsel, with their wealth of experience and knowledge in the

securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class."); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("[W]here, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair.").[4]   Indeed, there is absolutely nothing in the course of the negotiations or the substance of the Settlement that "disclose[s] grounds to doubt its fairness." *The Manual for Complex Litig*. § 30.41 (3d ed. 1995).   Thus, at a minimum, the arm's length nature of the negotiations and the participation of experienced counsel and a trained mediator throughout the process provide sufficient support for the Settlement's fairness.

### E.   The Settlement Satisfies the Criteria For Approval

The Eleventh Circuit has suggested that in determining whether a class action settlement is fair, reasonable and adequate, and thus, whether the settlement should be approved, the district court should consider:

(1)   The stage of the proceedings at which the settlement was achieved;

(2)   The likelihood of success at trial;

(3)   The range of possible recovery;

(4)   The point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable;

(5)   The complexity, expense and duration of the litigation; and

(6)   The substance and amount of opposition to the settlement.

---

[4] *See also Reed v. General Motor Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("the value of the assessment of able counsel negotiating at arm's length cannot be garnished"); *Hayes v. Shoney's Inc.*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *23 (N.D. Fla. Jan. 25, 1993) (approving settlement and concluding that the "settlement has been achieved in good faith through arm's length negotiations" and that "[b]oth sides have been represented by experienced and very competent counsel, who have professionally handled this matter in the best interests of their respective clients").

*See Bennett*, 737 F.2d at 986; *cf. Dikeman v. Progressive Express Ins. Co.*, 312 Fed. Appx. 168, 171 (11th Cir. 2008).   Courts have emphasized, however, these factors should not be applied in a "formalistic" fashion.   *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992)("A class action settlement cannot be measured precisely against any particular set of factors.").   Basic to the determination of whether a settlement is fair, reasonable and adequate "is the need to compare the terms of the compromise with the likely rewards of litigation."   *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1080 (2d Cir. 1995)(quoting *Weinberger*, 698 F.2d at 73).

In this case, consideration of these relevant factors establishes that the Settlement is fair, reasonable and adequate.

> 1.  **The Stage of the Proceedings at Which Settlement was Achieved Supports Approval of the Settlement**

"[T]he stage of the proceedings" should be considered by the courts in determining the fairness, reasonableness and adequacy of a proposed class action settlement.   *See*, *e.g.*, *Weinberger*, 698 F.2d at 74; *City of Detroit v. Grinnell*, 356 F. Supp. 1380 (S.D.N.Y. 1992), *aff'd,* 495 F.2d 448, 463; *In re Baldwin-United Corp.*, 607 F. Supp. 1312, 1320 (S.D.N.Y. 1985); *Warner Communications*, 618 F. Supp. at 745, *aff'd,* 798 F.2d at 37.   This is to ensure that plaintiffs have had access to sufficient material to evaluate their case and assess the adequacy of any settlement proposal in light of the strengths and weaknesses of their position. *See Chatelain*, 805 F. Supp. at 213-14.

Here, as a condition of Settlement, Plaintiffs insisted upon significant confirmatory discovery to supplement voluminous paper discovery provided to Plaintiffs prior to the mediation.   Such discovery was necessary for Plaintiffs to confirm allegations made by Defendants in mediation and ensure the reasonableness of the Settlement's terms and conditions

for proposed Class Members. Settlement Counsel had already conducted an extensive factual investigation – including interviewing numerous witnesses, reviewing and analyzing Defendants' regulatory filings, financial reports, publically available marketing materials and client statements. Confirmatory discovery permitted Settlement Counsel to then review thousands of pages of internal documents from Defendants and interviewed the product manager of the Payment Protection program. *See* Joint Decl. at ¶ 13. This lengthy, and at times contentious, interview served to confirm prior representations made by Defendants, and allowed for a discussion and further examination of the information contained in the document production. *Id.* In particular, Plaintiffs confirmatory discovery focused on Defendants' policies regarding marketing and enrollment of plan members. *Id.* at 19. Plaintiffs were able to substantiate critical information provided by Defendants, including, for example, the average length of time cardmembers remained enrolled in Payment Protection Products, and ultimately achieved an acceptable level of comfort with the accuracy of Chase's statements upon which Plaintiffs based the agreement reached at the mediation. *Id.* The Litigation has been hard-fought. Specifically, Settlement Counsel researched and analyzed all factors involved in Plaintiffs' claims as well as the possible defenses available to Defendants. Defendants filed a Motion to Dismiss [Dkt #11], and Plaintiffs assessed the likelihood of prevailing on the motion and drafted an opposition that was never filed.

Settlement occurred here only after Plaintiffs had a full and complete opportunity to assess the facts supporting their claims, the legal and factual defenses likely to be raised by Defendants, the difficulty of establishing damages, and the risks of continued litigation. Counsel already had a significant foundation of understanding of Payment Protection and litigation strategy based on experience in other cases against credit card companies and the Capital One

litigation. *See* Joint Declaration at ¶¶ 16-19. Thus, Plaintiffs already had a clear picture of the strengths and weaknesses of their case when they negotiated the Settlement. As such, Plaintiffs' Counsel certainly had sufficient information to act intelligently in negotiating the terms of the Settlement that are before the Court for approval. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021-22 (N.D. Ill. 2000)(court concluded that class counsel had ample opportunity to reach an informed decision concerning the merits of the proposed settlement), *aff'd*, 267 F.3d 743 (7th Cir. 2001); *Strang*, 890 F. Supp. at 501 (approving settlement at early stages of litigation where plaintiffs had conducted sufficient discovery to fairly evaluate the merit of defendants' positions during settlement negotiations); *Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 507 (E.D. Pa. 2000)("The fact that [a] case is in an early stage of proceedings does not necessarily weigh against approval of the settlement."); *Warner Communications*, 618 F. Supp. at 745. Settlement has been approved in cases where significantly less discovery and investigation was conducted. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. Apr. 3, 1981)[5] (rejecting objectors' argument that a settlement was inadequate based on the lack of formal discovery because "plaintiffs' negotiators had access to a plethora of information regarding the facts of their case"); *see also Cotton v. Hinton*, 449 F.2d 1326, 1332 (5th Cir. 1997) (observing that "informality in the discovery of information is desired," and "[i]t is too often forgotten that a conference or telephone call to opposing counsel may often achieve the results sought by formal discovery").

    Thus, because there is no reason to doubt "the integrity of the arm's length negotiation process" in this action, "great weight [should be] accorded to the recommendations of counsel,

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted all decisions from the Fifth Circuit published before Sept. 30, 1981 as binding precedent.

who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships. Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (internal quotations omitted).

## 2. The Likelihood of Success at Trial is Uncertain and Results of Litigation are Always in Doubt

Courts unanimously acknowledge that pursuing litigation to completion is inherently risky and costly. *See Woodward*, 1996 U.S. Dist. 7372 at *48 ("In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion")(quoting *Georgine v. Amchem Products, Inc.*, 157 F.R.D. 246, 320 (E.D. Pa. 1994)). Plaintiffs believe their case against Defendants has substantial merit, and were prepared to prosecute this Action to trial. Plaintiffs are, however, mindful that all litigation - particularly complex class action litigation - is an uncertain proposition. *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618, at *38 (S.D. Fla. Jan. 30, 2007) ("Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome.").

This factor requires the Court to balance the likelihood of ultimate success on the merits against the relief offered by the proposed settlement. *Whitford*, 147 F.R.D. at 140. Stated another way, the Court should balance the benefits afforded to members of the Class, and the *immediacy* and *certainty* of a substantial recovery for them, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 208 (W.D. Tex. 1998) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *accord In re Gulf*

*Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 591-92 (S.D.N.Y. 1992); *Warner Communications*, 618 F. Supp. at 741; *Baldwin-United Corp.*, 607 F. Supp. at 1320-21.

While Plaintiffs believe there is substantial evidence to support their claims, the complexities and uncertainties of this litigation nevertheless warrant the approval of the Settlement. As the court noted in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F. 2d 1079, 1085-86 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971), "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." 314 F. Supp. at 743-44.

Here, the Settlement fairly reflects the risks of Litigation and provides an immediate benefit to Eligible Class Members, without the risk of further delay, additional expenses and costs, and the possibility of achieving no recovery at all for the Class. If Plaintiffs proceed to trial, they would face difficult factual and legal hurdles in this Action. For example, to attain the maximum recovery in this Action, Plaintiff would have the burden of demonstrating by a preponderance of the evidence, *inter alia*, (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement. *See Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007). While Plaintiffs' Counsel firmly believe - based on their investigation and discovery - that the claims against Defendants have considerable merit, and that Plaintiffs would prevail in any trial against Defendants, Plaintiffs' Counsel also recognize that establishing liability at trial would by no means be guaranteed, and that Plaintiffs would face significant risks in doing so. For example, Defendants would likely contend, as they did in the Motion to Dismiss, that the alleged misconduct does not give rise to a deceptive or unfair act or that Plaintiffs were not damaged as a result of their conduct. Other risks, including the enforceability of consumer arbitration clauses, also exist. *See* Joint Decl., ¶ 29.

Collectively, Defendants' challenges to Plaintiffs' claims could certainly lead to dismissal of Plaintiffs' claims on a motion to dismiss or a motion for summary judgment. Further, Plaintiffs would have to face the difficult, costly and time-consuming process of certifying the class. In addition, a jury could render a defense verdict at trial, giving real meaning to the proposition that "a jury verdict in [plaintiffs'] favor against the settling Defendant is by no means a certainty." *Biben v. Card*, Nos. 84-0844-CV-W-6, 84-0846-CV-W-6, 84-0978-CV-W-6, 1991 U.S. Dist. LEXIS 18448, at *4 (W.D. Mo. Dec. 10, 1991). Finally, Plaintiffs have to face the real possibility of having to defend any of these verdicts in appellate courts.

Even though Plaintiffs believe that their claims have merit and that they will succeed at trial and beyond, the Settlement reached here offers a fair and reasonable compromise to the risk of litigating against the well-funded Defendants. Plaintiffs have opted for an immediate and tangible benefit for the Class, rather than unnecessarily expending a substantial amount of time, money and effort on a possibly fruitless endeavor. Plaintiffs entered into the Settlement only after carefully weighing the value of continuing the litigation. The Court should take into account that complex class action litigation is inherently difficult and the outcome of any trial is uncertain. Although Plaintiffs are confident that they could present ample evidence against Defendants, Plaintiffs' Counsel are also aware of the risks confronting Plaintiffs in this type of complex litigation.

### 3.   The Proposed Settlement Falls Within the Range of Possible Recovery at Which a Settlement is Fair, Adequate, and Reasonable

The benefits of the Settlement justify approval. Plaintiffs have secured a $20 million Settlement. This significant Settlement will provide immediate, tangible benefits to Eligible Class Members without incurring the additional costs and fees associated with further litigation.

The "best possible" recovery necessarily assumes Plaintiffs' success on class certification, liability and damages (as well as the ability of Defendants to pay the judgment). Many facts must be considered in making this determination.   The courts agree that the determination of a reasonable settlement is not susceptible to mathematical precision.  Indeed, "in any case[,] there is a range of reasonableness with respect to a settlement."  *Newman*, 464 F.2d at 693; *Flickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986).

In *Grinnell*, the Second Circuit stated:

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.  In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.

495 F.2d at 455 (footnote omitted); *see also Behrens*, 118 F.R.D. 542 ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise").  In *Grinnell*, Judge Metzner found a proposed settlement of 3.2% to 3.7% of the potential recovery "well within the ball park."  *Id.*; *see also Strube v. Am. Equity Investment Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated damages); *Behrens*, 118 F.R.D. at 543 (approving settlement equal to 5.7% of estimated damages).

Irrespective of the damages estimated, experienced lawyers know that few cases tried before a jury result in an award of damages in the full amount requested.  Above all, the Settlement provides for immediate payments and/or credits of $20 million, not just the hope of payment years down the road.  *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985), *modified on other grounds*, 818 F.2d 179 (2d Cir. 1987), *cert. denied*, 487 U.S. 1234 (1988).  Given the obstacles and uncertainties attendant to this complex litigation,

this Settlement is well within the range of reasonableness, and is unquestionably better than another distinct "possibility" - no recovery at all.

### 4.   The Complexity, Expense, and Duration of Further Litigation Supports Approval of the Settlement

Moreover, "it is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331.  Indeed, the Eleventh Circuit has recognized that "[c]omplex litigation - like the instant case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas*, 967 F.2d at 493.

The foregoing principles are certainly applicable here.  Continued litigation against Defendants would be of substantial duration and cost.  Chase is one of the largest issuers of credit cards in the world (*see* Amended Complaint at ¶¶ 55 [Dkt # 15]) and can afford to finance expensive and protracted Litigation).  If this litigation were to continue beyond its present stage, significant additional time and resources would be necessary to complete discovery and pre-trial proceedings.[6]   Additionally, class certification, full fact and expert discovery and trial preparation would all have been massive endeavors in this case.  Plaintiffs' Counsel would have to expend significant hours and dollars in each and every stage of this Litigation, which could potentially take a number of years.  The trial itself would probably require several weeks, "with its attendant pretrial order, laborious winnowing of proof before trial, and post-trial skirmishing."

---

[6] Avoiding the delay and risk of protracted litigation against a defendant is a valid reason for counsel to recommend, and for the court to approve a settlement. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson* 390 U.S. 141, 424 (1968); *see also Shoney's,* 1993 U.S. Dist. LEXIS 749 at *15 ("I am convinced that the relief afforded by the settlement is fair and reasonable when the expense, complexity and the duration of the proceedings which would be necessary to carry this matter through trial is measured against the likelihood of recovery by the plaintiffs ... There is no dispute that further proceedings would be extremely lengthy, expensive and complex.").

*Gulf Oil/Cities Service*, 142 F.R.D. at 59.  Moreover, any trial judgment would still be subject to the continuing risks of litigation, through likely appeals.  Even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal or as a result of judgment notwithstanding the verdict.[7]

As such, "[t]he potential for this litigation to result in great expense and to continue for a long time suggests that settlement is in the best interests of the Class."  *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995); *Maywalt*, 67 F.3d at 1080.  Thus, Plaintiffs' Counsel believe that continued Litigation of this action would be complex, time-consuming and expensive, with the chances of obtaining a recovery greater than that provided by the Settlement far from assured.  The Settlement secures for the Class a substantial benefit undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation.  *See Warren*, 693 F. Supp. at 1059 (observing that "[t]he parties estimate that a trial of this case would take three weeks of Court time, and would cost hundreds of thousands of dollars in attorneys' fees, expert witness fees and costs.  These factors militate in favor of a decision to accept the proposed settlement."), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

---

[7] *See*, *e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997)(reversing $81.3 million jury verdict for plaintiff after 7 years of litigation); *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996)(in ERISA class action, Third Circuit reversed judgment for plaintiffs in bench trial and entered judgment for all Defendant on all counts); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606 (5th Cir. 1996) (reversing verdict for plaintiffs on negligent misrepresentation claim against defendant auditor and dismissing claim), *cert. denied* 519 U.S. 869 (1996); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (multi-million judgment for plaintiffs reversed on appeal after 11 years of litigation).

### 5.    The Reaction of the Class Supports Approval of the Settlement

"It is well settled that 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.'" *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)(quoting *Sala v. National R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989)).

Here, the deadline for submission of objections to, or requests for exclusion from, the Settlement was August 19, 2011 (120 days after the day that Notices were sent to the Settlement Class per Court Order, ¶ 15 [Dkt # 24]).  To date, out of the entire mailing of approximately 15.1 million individual notices to Class members, 24 Class members have formally objected, 3,862 Class members have requested exclusion from the Settlement after receiving notice, and approximately 7% notices have been determined to be undeliverable by the Claims Administrator, rendering these opt-outs pursuant to the Settlement Agreement.  *See* Bertino Decl. at ¶¶ 11.[8] Collectively the objections, requests for exclusion, and undeliverable notices, along with various communications which cannot reasonably be described as either, represent a small percent of the Settlement Class.  The Settlement enjoys the overwhelming approval of the Settlement Class, which "'is entitled to nearly dispositive weight in this court's evaluation of the

---

[8]  As further discussed in section VII *infra*, the objections received echo a desire to have recovered a greater amount paid for Payment Protection.  Thus, essentially, the objectors question the Settlement for not achieving the ceiling in damages.  However, such a position does not embody the essence of compromise, which is that the "best possible" recovery must be tempered by the risks of further litigation.  *See Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 U.S. Dist. LEXIS 113488, at *11 (M.D. Fla. Nov. 23, 2009) (noting "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes").  Moreover, the proposed Plan of Allocation was formulated only after Class Counsel consulted with experts in the areas of accounting and damages and in a way to ensure an equitable distribution among Class members.  Accordingly, as demonstrated herein, it is Class Counsels' belief that the Settlement is in the best interests of the Class and should be finally approved, and the small number of objectors have not presented a sufficient basis for this Court to reject the proposed Settlement.  Likewise, and as demonstrated in the Joint Declaration, the requested fee and expense award and service payments are reasonable.  *Id.*

proposed settlement[].'" *Fisher Bros. v. Mueller Brass Co.*, 630 F. Supp. 493, 498 (E.D. Pa. 1985)(quoting *In re Materials Antitrust Litig.*, 100 F.R.D. 367, 382 (N.D. Ohio 1983)); *see also Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. at 326 ("The number of objections is but a factor in the Court's consideration. 'A settlement can be fair notwithstanding a large number of class members who oppose.' The objections to the settlement in this instance, however, are a very small percentage of the ten million notices served . . . .")(quoting *Cotton*, 559 F.2d at 1331). Accordingly, the reaction of the Class to the Settlement supports approval by this Court. *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)("The attitude of the members of the Class, as expressed directly or by failure to object, after notice of the settlement is a proper consideration for the trial court, though a settlement is not unfair nor unreasonable simply because a large number of class members oppose it.")(citations omitted), *cert. denied*, 424 U.S. 967 (1976).

## 6. Public Interest

Finally, the proposed settlement promotes the public interest because aggrieved class members are afforded an avenue of relief at no personal risk. It is in the public interest to resolve all such claims on a nationwide basis, rather than through duplicative and individual suits which would drain judicial resources while, at best, resolving only a tiny fraction of all claims. It is also in the public interest to resolve the dispute in a manner that tailors the nature and the extent of the relief to each class member to that class member's particular circumstances. As the Sixth Circuit has stated:

> Settlement agreements should …be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial and spared to the parties, to other litigants waiting their turn before over-burdened courts, and to citizens who taxes support the latter. An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp v. Allied Witan Co.,* 531 F.2d 1368, 1372 (6th Cir. 7976), *cert. denied* 429 U.S. 862 (1976).

Viewed as a whole, the relevant criteria for finding a class action settlement fair and reasonable are plainly satisfied in this case. The Court should accordingly give its final approval to the Settlement.

## IV.    THE NOTICE TO THE CLASS SATISFIED DUE PROCESS

Due process requires that in a class action, notice of the settlement and an opportunity to be heard must be given absent the class members. *Cf. Mahburn v. Nat'l Healthcare, Inc.* 684 F. Supp. 660, 667 (M.D. Ala. 1988)("The Court is of the opinion that the notice given to the members of the plaintiff class by publication and by mail as aforesaid, complied with all the requirements of due process, all requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best practicable notice under the circumstances."). Rule 23(e) requires that notice fairly apprise class members of the terms of the proposed settlement.

The Notice [Dkt # 16-5], the form of which has already been approved by this Court, was mailed directly to approximately 15.1 million recipients, answering the following questions that might be posed by the potential class members who received notice:

- Who is in the Settlement Class?
- What was this lawsuit about?
- Who represented me?
- What benefits can I receive as a result of this settlement?
- Do I have to pay the lawyers representing me?
- What am I agreeing to by remaining in the settlement class in this case?
- What if I do not agree with the settlement?
- How do I exclude myself from the settlement class in this case?
- What happens if I do nothing at all?
- Where can I get more information?

*Id.* at Dkt # 16-5. The Notice fairly apprized the potential class members of the settlement and their individual rights thereto.

### A.    The Best Practicable Notice Was Provided to the Class

Detailed Notice, in the form approved by the Court, was provided to the members of the Class. *See* Bertino Decl. As ordered by the Court, the settlement claims administrator, the Certified Public Accounting firm Heffler, Radetich & Saitta L.L.P. ("Settlement Administrator") mailed the Notice to each Class Member whose interests would be affected by the proposed settlement, who were identified from the records maintained by Defendants. *Id.* at ¶ 5. The proposed manner of dissemination of notice to Class Members by first class mail is the usual method of notification of class action certifications and settlements. *See Holman v. Student Loan Xpress, Inc.*, No. 8:08-305, 2009 U.S. Dist. LEXIS 113491 (M.D. Fla. November 19, 2009); H. Newberg & A. Conte, 2 <u>Newberg on Class Actions</u>, § 8.24 at 8-75 to 8-76 (3d ed. 1992). In this case, the plan of Notice involved individually-mailed notices likely to reach virtually all Class Members who are interested parties.

### B.    The Notice Program Included Internet Placement and Publication

In addition to direct mailing and Summary Notice timely published in the USA Today National Edition, a website administered and maintained by the Settlement Administrator containing the documents was established, listing important dates and any other information as required in the Preliminary Approval Order. The URL for the website relating to this case is www.KardonickSettlement.com. In plain language, the website provides to potential Eligible Class Members, *inter alia*, (1) information regarding the facts alleged in the case, (2) important case-related documents which can be downloaded or printed from the website, including the claim form, the legal notice, the Settlement Agreement and proposed Orders, (3) Frequently Asked Questions, (4) a calendar of important dates, and (5) contact information of the Settlement

Administrator for further discussion. *See* www.KardonickSettlement.com. To date, the settlement website has been visited 336,054 times. *See* Bertino Decl., ¶ 10. In addition, class members have made 61,932 calls to the toll-free number to listen to the recorded message and 12,459 of those callers selected the option to speak with an operator. *Id.*

### C. The Class Notice Was Reasonably Calculated to Inform Class Members of Their Rights

The notice provided to the class members was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contain[s] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The notice, among other things, defines the Settlement Class, describes the release to be given the settling parties by the settlement as well as the nature of and proposed, estimated distribution of the settlement proceeds, and informs Class members of their right to opt-out and object, the procedures for doing so, and the time and place of the final approval hearing. It also notifies class members that a class judgment will bind them unless they opt out, and tells them where they can obtain more information, such as access to a full copy of the Stipulation of Settlement. It further describes in summary form the fact that Plaintiffs' counsel will be seeking attorneys' fees, payable by defendants, not to exceed $5 million.

In sum, the Class was provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, this Court has personal jurisdiction over the entire Class.

## V.   THE PLAN OF ADMINISTRATION AND DISTRIBUTION IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Approval of a plan of allocation of settlement proceeds in a class action under Rule 23 is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, [1994-1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 98,355 at 90,446 (N.D. Cal. Jun. 18, 1994); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.  *White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), *aff'd* 41 F.2d 402 (8th Cir. 1994); *see also In re Oracle* at 90,446 ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

The plan of allocation, referred to as the Plan of Administration and Distribution [*see* Dkt # 16-9], was formulated by counsel for all parties in consultation with their respective advisors, ensuring its fairness and reliability.  Class Counsel believes that they acted fairly in developing the Plan of Administration and Distribution.  Accordingly, Class Counsel respectfully submits that the proposed Plan of Administration and Distribution is fair and reasonable and should be approved by the Court.

## VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED

The Court has previously conditionally certified the Class for settlement purposes in the Preliminary Approval Order [*see* Dkt # 24].  In light of the substantial benefits being conferred on the Class in the Settlement, the Court should now finally certify this action for the purposes of this Settlement.  Class certification is appropriate for purposes of the Settlement because the Settlement Class is sufficiently numerous to make joinder impracticable, there are questions of law and fact common to the Settlement Class, the claims of Plaintiffs are typical of the Class,

and Plaintiffs will fairly and adequately protect the interests of the Class.  In addition, the questions of law and fact common to the Settlement Class predominate over any issues affecting individual members of the Settlement Class and the class action procedure is the superior method of resolving the claims and defenses in this action.  *See* Fed. R. Civ. P. 23.  Indeed, several cases have allowed class certification in circumstances similar to those present here, where litigation has arisen from credit card practices that have affected a class of account holders.  *See, e.g., Roper v. Consure, Inc*., 578 F.2d 1106 (5th Cir. 1978); *Mangone v. First USA Bank*, 206 F.R.D. 222 (S.D. Ill. 2001); *Spark v. MBNA Corp*., 178 F.R.D. 431 (D. Del. 1998).  Accordingly, certification of the Settlement Class in the instant litigation is appropriate.[9]

### A.   The Proposed Settlement Class is Sufficiently Numerous

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  See *In re Theragenics Corp. Sec. Litig*., 205 F.R.D. 687 (N.D. Ga. 2002).  Significantly, "[i]mpracticable does not mean 'impossible.'"  *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 666 (M.D. Fla. 1996) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).  Rather, the term signifies a difficulty or inconvenience of joining all members of the class.  *In re Prudential Ins. Co. of Am Sales Practices Litig*., 148 F.3d 283, 309 (3d Cir. 1998).  There is no threshold or specific number at which joinder is impracticable.  *See Cox v. American Cast Iron Pipe Co*., 784 F.2d 1546, 1553 (11th Cir. 1986).  While no arbitrary rules regarding the necessary size of classes have been established, "[w]hen class size reaches substantial proportions, the impracticability requirement is usually satisfied by numbers alone."  *In re Am. Med. Sys*., 75 F.3d 1069, 1079 (6th Cir. 1996); *see also Paxton v. Union Nat'l Bank*, 688 F.2d

---

[9] Notably, "in any doubtful case…any error, if there is to be one, should be committed in favor allowing a class action." *CV Reit, v. Levy,* 144 F.R.D. 690, 695 (S.D. Fla. 1992)(quoting *Eisenberg v. Gagnon,* 766 F.2d 770, 785 (3rd Cir.) , *cert. denied,* 474 U.S. 946 (1985)).

552, 559 (8th Cir. 1982).   To this end, many courts have determined that the numerosity requirement is satisfied when a proposed class involves at least 40 members.  *See Cox*, 784 F.2d at 1553 (noting "'generally less than twenty-one is inadequate, more then forty adequate, with numbers between varying according to other factors.'")(citing 3B Moore's Federal Practice C 23.05[1] at n. 7 (1978); *see also* 1 <u>Newberg on Class Actions</u> C 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable"); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members"); *Brown v. Eckerd Drugs, Inc*., 669 F.2d 913, 917 (4th Cir. 1981) ("If the class has more than forty people in it, numerosity is satisfied.") (internal quotation marks omitted); *CE Design v. Beaty Constr., Inc*., No. 07 C 3340, 2009 U.S. Dist. LEXIS 5842, at *6 (N.D. Ill. Jan. 26, 2009) ("Although there is no bright line test for numerosity, a class of 40 is generally sufficient.") (internal citation and quotation marks omitted).

Here, Defendants identified over 15 million potential Settlement Class members who were sent the court-approved Notice.  Based on this estimate and the fact that Defendants market this product throughout the country, it is reasonable to assume that cardholders are geographically dispersed throughout the United States, making joinder of all members impractical.  *See Hammett v. American Bankers Ins. Co*., 203 F.R.D. 690, 694 (S.D. Fla. 2001) ("There is no definite standard as to the size of a given class, and Plaintiff's estimate need only be reasonable."); *In re Anicom Inc. Sec. Litig*., No. 00C 4391, 2002 U.S. Dist. LEXIS 5575, at *6

(N.D. Ill. March 26, 2002) ("Plaintiff need not demonstrate the exact number of class members so long as a conclusion is apparent from good-faith estimates"); *Peterson v. H & R Block Tax Servs.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997) ("If the exact size of the class is unknown, 'the court is entitled to make common sense assumptions in order to support a finding of numerosity.'") (quoting *Patrykus v. Gomilla*, 121 F.R.D. 357, 360 (N.D. Ill. 1988)).

Moreover, in addition to the size of the class, a court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Paxton,* 688 F.2d at 560; *Morgan v. UPS of Am.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996). Here, the members of the Class have suffered, on an individual basis, relatively small amounts of damage when compared to the costs of trying individual suits. Realistically, individual damages would likely be in the range of a few hundred dollars at most, but, collectively, the members of the Settlement Class have suffered millions upon millions of dollars of damage. In sum, no single member of the Settlement Class could afford to prosecute this action on an individual basis because the costs associated with this case would far outweigh his or her individual damages.

### B.   <u>Common Questions of Law and Fact Exist</u>

To establish commonality under Rule 23, Plaintiffs need only show that one common question of law or fact affects all or a significant number of class members. See *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 270 (S.D. Fla. 2003) ("the commonality requirement is not a high threshold and generally only requires one common question of law or fact"). Thus, this requirement is usually satisfied when a common nucleus of operative facts unites a class. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). In other words, commonality is met when "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). In this regard, the focus should be

on whether a representative's claim arises from the same course of conduct that gives rise to the remaining claims, and whether the claims are based on the same legal theory. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983); *Brown v. SCI Funeral Servs. of Florida, Inc*., 212 F.R.D. 602, 604 (S.D. Fla. 2003). Consequently, the presence of factual variations among the class members does not defeat commonality, so long as there is at least one question of law or fact common to the class. *See Rosario*, 963 F.2d at 1017; *Rentschler v. Carnahan*, 160 F.R.D. 114, 116 (E.D. Mo. 1995) ("There need be only a single issue common to all class members."); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (holding the commonality requirement "will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the proposed class.").

Here, the court-appointed Class Representative Plaintiffs, as well as the members of the proposed Settlement Class, all challenge the same course of conduct of Defendants. Indeed, Plaintiffs' claims and those of other Settlement Class members all arise from the same body of facts as they were all injured by the same series of misleading and deceptive statements. In addition, the claims of Plaintiffs and other Settlement Class members arise under identical legal theories. Accordingly, there are numerous common issues of law and fact in the present case, including:

a)   Whether the defendants' sales, billing and marketing scheme is fraudulent, deceptive, unlawful and/or unfair;

b)   Whether Chase's common and uniform sales, billing and marketing schemes related to the Payment Protection product constitute a deceptive trade practice;

c)   Whether Plaintiffs and the members of the Class are entitled to restitution of all amounts acquired by defendants through their common and uniform scheme;

d)   Whether Plaintiffs and the members of the Class are entitled to injunctive relief requiring the disgorgement of all wrongfully collected fees by Defendants;

e)      Whether Plaintiffs and the members of the Class are entitled to prospective injunctive relief enjoining Chase from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged herein; and

f)      Whether Plaintiffs and the members of the Class are entitled to recover compensatory and punitive damages as a result of the Defendants' wrongful scheme.

In sum, each member of the Settlement Class was subjected to the same course of conduct involving similar marketing materials, sales agreements, and billing statements, and, therefore, their claims arise from the identical acts of Chase.   Courts have recognized commonality in similar circumstances.  *See Spinelli v. Capital One Bank*, 265 F.R.D. 598 (M.D. Fla. 2009) (certifying a class in a credit card Payment Protection case); *Brink v. First Credit Res.*, 185 F.R.D. 567, 570 (D. Ariz. 1999) (holding, in case against credit card company, that commonality requirement was satisfied because "relief for each potential class member depends upon the common legal issue of whether Defendant violated one or more sections of the FDCPA when it mailed the credit card certificate to plaintiffs"); *Spark*, 178 F.R.D. at 435 (commonality requirement satisfied in action against credit card company for unfair and deceptive practices where "[e]ach of the proposed plaintiffs" claims stem from the same general representation by [defendant], and the issues for each of these plaintiffs will be identical").   Accordingly, the commonality requirement has been met.

**C.      The Representative Plaintiffs' Claims are Typical of the Claims of the Settlement Class Members**

The proposed Settlement Class also satisfies the Rule 23 typicality requirement, which requires that the representative party's claims be typical of the claims of other members of the putative class.  *See* Fed. R. Civ. P. 23(a)(3).  The typicality requirement does not focus on the personal characteristics of the representative party or his individual circumstances as compared to the Class, but rather upon the typicality of the proposed representative's claims as they relate

to the defendants' conduct and activities. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493 (S.D. Fla. 2003) ("[M]inor factual differences do not render a claim atypical if the claim arises from [sic] similar course of conduct giving rise to the claims of the class members."); *see also Alpern v. UtiliCorp. United*, 84 F.3d 1525, 1540 (8th Cir.1996) (holding that slight factual differences existing between the named class representatives and other class members will not defeat typicality); *DeBoer Mellon Mort. Co.*, 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality requirement satisfied where class members possessing different mortgage instruments sought same form of relief). It naturally follows, then, that a finding of commonality generally results in a finding that typicality also exists. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996). This requirement is readily met when "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Avila-Gonzalez v. Barajas*, No. 2:04-cv-567-FtM-33DNF, 2005 U.S. Dist. LEXIS 44805, at *11, n.4 (M. D. Fla. April 25, 2005); *see also Fuller*, 197 F.R.D. at 700 (finding typicality where "each of the prospective members [of the Class] received a variation of the same collection letter as the named plaintiffs."); *CV Reit*, 144 F.R.D. at 697 ("Typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based upon the same legal theories"); *see also De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232-33 (7th Cir. 1983) (holding that even when factual differences exist, similarity of legal theory satisfies this requirement). As such, "[t]he typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary." *Avila-Gonzalez*, 2005 U.S. Dist. LEXIS 44805, at *11; *see also Tidwell v. Schweiker*, 677 F.2d 560, 586 (7th Cir. 1982); *Phillips v. Joint*

*Legislative Committee on Performance*, 637 F.2d 1014, 1024 (5th Cir. 1981). In this regard, the requirements of commonality and typicality "tend to merge." *Avila-Gonzalez*, 2005 U.S. Dist. LEXIS 44805, at *11 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). Thus, "the test, ultimately, is whether the class representative will promote the interests of the class as he protects his own." *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986).

In the present case, the Representative Plaintiffs' claims are typical of those of Settlement Class members because they arise from the same event, conduct or practice giving rise to the claims of absent Settlement Class members, and seek the same relief. More specifically, the claims of the Representative Plaintiffs and each of the Settlement Class members are predicated on Defendants' mass marketing approach that uses standardized marketing and business practices that are applied in a uniform manner (mass mailings, telephone call centers, etc.) and standardized language in marketing materials representing the terms and conditions of Defendants' Payment Protection plan. Additionally, the Representative Plaintiffs seek to recover damages caused by the same materially false and misleading statements and course of conduct that give rise to the claims of the Settlement Class. As such, the claim of the Representative Plaintiffs and the claims of the Settlement Class Members are so interrelated that the interests of the Settlement Class Members will be fully and adequately protected. Accordingly, the Representative Plaintiffs' claims are typical of those of the Settlement Class.

    **D.**    <u>**Representative Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Represent the Interests of the Class**</u>

Rule 23(a)(4) requires that "the representatives parties will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*

-36-

*Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. 147, 157-58, n.13 (1982)).  With this in mind, this requirement is met if: (1) the named plaintiff has interests in common with, and not antagonistic to, the class' interest; and (2) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) ("'Adequacy of representation means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel."); *Avila-Gonzalez*, 2005 U.S. Dist. LEXIS 44805, at *14.

Both prongs of the adequacy test have been met here.  The Class Representatives' interests, as demonstrated above, are directly aligned with, and not in conflict with, the interests of the Settlement Class members.  There also can be no dispute that Plaintiffs' Counsel is capable of prosecuting this litigation.  Indeed, Plaintiffs' Counsel has extensive experience in prosecuting securities and consumer fraud class actions.  *See* Firm Resumes attached to the Memorandum of Law in Support of Joint Motion for Preliminary Approval of Class Settlement [Dkt # 18-1 and 18-2], previously filed with this Court on December 21, 2010.  Moreover, Class counsel has served as lead counsel in over twenty similar cases brought against various credit card companies regarding Payment Protection products in a number of states for these types of violations for the last four years, starting with consumer class actions against Capital One, which subsequently settled.  *See* Joint Decl., ¶¶ 16-19.  Our firms has been involved in almost all of the cases against credit card companies regarding Payment Protection in one manner or another, including settlements in principle reached with JPMorgan Chase, HSBC and Discover.  As reflected in the respective firm resumes, each firm is well-established, possesses extensive knowledge of and experience in prosecuting class actions in courts throughout the United States,

and has recovered hundreds of millions of dollars for their clients.  Needless to say, Plaintiffs'

Counsel is qualified to represent the Settlement Class and will, along with the Class

Representatives, vigorously protect the interests of the Class.

In addition, in appointing class counsel, the Court must consider:

- the work counsel has done in identifying potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class.

Federal Rule of Civil Procedure 23(g)(1)(C)(i).  Also, the Court:

(ii)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class;

(iii)   may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and

(iv)    may make further orders in connection with the appointment.

*Id.* at Rule 23(g)(1)(C)(ii)-(iv).

Plaintiffs' Counsel easily satisfy all of the factors set forth in Rule 23(g)(1)(C).  They

have performed substantial work, including reviewing thousands of pages of documents,

interviewing witnesses, and researching applicable law to be able to fully assess the strengths of

Plaintiffs' claims and possible defenses available to Chase.  Plaintiffs' counsel also have served

as lead counsel or co-lead counsel in numerous class actions involving complex litigation, as

reflected in the attached firm resumes.  Additionally, Plaintiffs' Counsel has already committed

substantial resources to litigate this case.

**E.      The Settlement Class Satisfies the Requirements of Rule 23(b)**

Certification of the Settlement Class is further appropriate because the questions of law

or fact common to members of the Settlement Class predominate over any questions affecting

only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the case. *See* Fed. R. Civ. P. 23(b)(3). In a settlement setting, this inquiry is essentially irrelevant. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620 (1997).

In analyzing the predominance factor, the United States Supreme Court has stated that "[p]redominance is a test *readily met in certain cases alleging consumer* or securities *fraud* or violations of the antitrust laws." *Id.* at 625 (emphasis added). Following the Supreme Court's directive, numerous other courts have determined that common issues predominant in litigation involving oral and written misrepresentations in violation of state consumer protection laws. *See Smith v. WM Wrigley Jr. Co.,* No. 09-60646, 2010 U.S. Dist. LEXIS 67832, *14-15 (S.D. Fla. June 15, 2010) (finding predominance where "the claims of the named Plaintiffs and the Proposed Class are based on the same legal theories and the same uniform advertising."); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 317 (S.D. Fla. 2001) (certifying TILA and pendent state law class because "Plaintiff alleges that Defendant provided the same disclosures to all class members and that those disclosures violated TILA. These common issues predominate."); *Mangone v. First USA Bank*, 206 F.R.D. 222, 236 (S.D. Ill. 2001); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 142 (W.D. Ky. 1992); *In re Prudential Ins. Co. of America Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (certifying a nationwide settlement class asserting claims for, *inter alia*, unjust enrichment and violation of state consumer protection laws); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 249-50 (D. Del. 2002) (certifying nationwide class for settlement purposes on claims of unjust enrichment and consumer protection

laws because insofar as differences between state laws impact only case management, these differences are irrelevant to certification of a settlement class."); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 691-92 (S.D. Fla. 1998) (certifying nationwide class for unjust enrichment because the potential application of varying state laws did not preclude class certification although it may cause trial problems; specifically holding that "at least two of [plaintiff]'s claims, breach of contract and unjust enrichment, are universally recognized causes of action that are materially the same throughout the United States.").

Here, like these cases, the issue of Defendants' liability is centered on whether representations made by them in connection with the Payment Protection program were misleading, deceptive and/or unconscionable, and these issues predominate over any individual issues that theoretically might exist. *See, e.g., In Re: Bank One Securities Litigation/First Chicago Shareholder Claims*, No. 00-0767, 2002 U.S. Dist. LEXIS 8709, at *22 (N.D. Ill. May 9, 2002) ("The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue.").

Furthermore, a class action is the superior vehicle for resolving Plaintiffs' claims. As noted above, the Settlement Class is estimated to include millions of cardholders located throughout the country. Thus, as a practicable matter, it would be economically infeasible for most putative class members to retain a private attorney to pursue individual litigation against Defendants for their individual compensatory recoveries. *See Amchem*, 521 U.S. at 616 ("[T]he[] interests [of individuals in conducting separate lawsuits] may be theoretic rather than practical [where] . . . the amounts at stake for individuals [are] so small that separate suits would be impractical." (quotation omitted)); 7A Wright and Miller, Federal Practice and Procedure, Sec. 1779 at 557 ("[A] group composed of consumers . . . typically will be unable to pursue their

claims on an individual basis because the cost of doing so exceeds any recovery they might secure."); *Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 U.S. Dist. LEXIS 114451, at *20 (S.D. Cal. Sept. 5, 2008) ("The class action procedure is the superior mechanism for dispute resolution in this matter . . . . Through the class action procedure, these common claims can be brought in one proceeding, thereby eliminating unnecessary duplication, preserving limited judicial resources, and achieving economies of time, effort, and expense."). In short, it is evident that most putative class members have no overriding interest in conducting separate lawsuits against Defendants.

What is more, superiority of the class mechanism in the present case is further highlighted by the absence of manageability issues as a settlement class does not present the issues of manageability that might arise with a litigated class. *See Amchem Prods,* 521 U.S. at 620. Accordingly, because common questions of law and fact predominate over individual questions, and a class action is the superior vehicle for resolving Plaintiffs' claims, Rule 23(b) is satisfied.

## VII. THE OBJECTIONS BY CLASS MEMBERS SHOULD BE OVERRULED

Only 24 out of more than 15 million Class Members have objected to the Settlement. *See* Bertino Decl. at ¶ 11. All of these objections have been provided to Class Counsel, the Settlement Administrator or filed with the Court. *See id. Inter alia*, the objectors complain that the amount they will receive is insufficient. Detailed information about each objector's claim is set forth in the attached Objectors' Chart.

For reasons set forth *infra* in this brief and that can be fully addressed at the Final Approval Hearing scheduled before Your Honor on September 9, 2011, none of these objections warrant rejection of the Settlement sought.

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that their motion for Final Approval be granted, that the proposed Settlement and Plan of Administration and Distribution be finally approved, that the Class be finally certified for settlement purposes, that the method and form of Notice provided to Class members be finally approved, and that final judgment be entered in accordance therewith.

Respectfully Submitted,

Dated: **August 26, 2011**                    **Ku & Mussman, P.A.**


                                                 /s/ Brian Ku
                                                Brian Ku (FL Bar # 610461)
                                                Louis Mussman (FL Bar # 597155)
                                                M. Ryan Casey (LA Bar #30192)
                                                12550 Biscayne Blvd., Suite 406,
                                                Miami, Florida 33181
                                                Tel: (305) 891-1322
                                                louis@kumussman.com

                                                Richard M. Golomb
                                                Ruben Honik
                                                Kenneth J. Grunfeld
                                                **GOLOMB & HONIK, P.C.**
                                                1515 Market Street, Suite 1100
                                                Philadelphia, PA 19102
                                                Tel: (215) 985-9177
                                                kgrunfeld@golombhonik.com

                                                Allen Carney
                                                Randall K. Pulliam
                                                Tiffany Wyatt Oldham
                                                **CARNEY WILLIAMS BATES
                                                PULLIAM & BOWMAN LLC**
                                                11311 Arcade Drive, Suite 200
                                                Little Rock, AR 72212
                                                Tel: (501) 312-8500
                                                rpulliam@carneywilliams.com

                                                *Attorneys for the Plaintiffs and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, KENNETH J. GRUNFELD, hereby certify that a true and correct copy of the foregoing

**Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action**

**Settlement and Plan of Allocation**, was served on counsel of record via CM/ECF, and all

objectors on the attached service list via U.S Mail postage pre-paid on the date below.


/s/ Kenneth J. Grunfeld
Kenneth J. Grunfeld, Esquire



**Dated:** <u>**August 26, 2011**</u>

## SERVICE LIST

***David Kardonik, et al. v. JP Morgan Chase & Co., and Chase Bank USA, N.A.***
**U.S. District Court Southern District of Florida Case NO. 10-CV-23235**

| | |
|---|---|
| Marc & Tammy Doran<br>5307 Gem Lake Road #30<br>Amarillo, TX  79106 | Carol A. Cole<br>3700 S. Ironwood Drive #139<br>Apache Junction, AZ  85120 |
| David B. Hibbard<br>Hilltop Towers Apt. #202<br>113 West Main Street<br>Watertown, NY  13601 | Kevin Quinlan<br>30 E. Hartsdale Ave, Apt 1B<br>Hartsdale, NY  10530 |
| Shirley Seege Brown<br>2305 W. Jefferson Street<br>Louisville, KY  40212 | Helen Wilcox<br>P.O. Box 20179<br>Newark, NJ  07102 |
| Trevor Grant<br>P.O. Box 3278<br>Conroe, TX  77305 | Cynthia M. Bracken<br>17304 Northway Circle<br>Boca Raton, FL  33496-5909 |
| Matthew W. Thomas<br>1848 Arlington Street<br>Bethlehem, PA  18017 | Margaret E. Wheeler<br>572 Herman Nerren Road<br>Huntington, TX  75949 |
| Carla Victoria Diaz<br>14434 Cornishcrest Road<br>Whittier, CA  90604 | Jonathan F. Marr<br>28 Smith Street, Apt. 2<br>Quincy, MA  02169 |
| Susie Marie Borden<br>2194 Main Street<br>Buffalo, NY  14214 | Thomas L. Cox, Jr.<br>4934 Tremont<br>Dallas, Texas 75214<br>*Counsel for Daniel and Katie Sibley<br>and Cindy Barginear* |
| Victor Capurso<br>37-40 75th Street<br>2nd Floor, Rear Room<br>Jackson Heights, NY  11372 | Clark Hampe<br>4063 Dunhaven Road<br>Dallas, Texas  75220 |
| Manijeh Sabi<br>420 Sand Creek Road, Apt. 609<br>Albany, NY  12205 | Matt Weinstein<br>Paul M. Kade<br>9200 South Dadeland Blvd., Suite 400<br>Miami, FL  33156<br>*Counsel for Douglas Paluczak, Chris Schulte<br>and Laura Fortman* |

| | |
|---|---|
| Patrick S. Sweeney<br>Sweeney & Sweeney, S.C.<br>440 Science Drive, Suite 101<br>Madison, WI  53711<br>*Counsel for Tom Blanchard and September Katje* | N. Albert Bacharach, Jr.<br>N. Albert Bacharach, Jr., P.A.<br>115 Northeast 6th Avenue<br>Gainesville, Florida  32601<br>*Counsel for William McWhorter* |